Argued December 4, decided December 31, 1912.

## STATE v. HUMPHREY.*

(128 Pac. 824.)

**Jury—Overruling Challenge for Cause—Effect of Peremptory Challenge.**

1. Although the trial court may have erred in overruling a challenge for cause, the error is cured by the exercise of a peremptory challenge against the juror in question.

**Jury—Challenge for Cause—Effect of Failure to Exercise Peremptory Challenges.**

2. Until a defendant's peremptory challenges are exhausted, he cannot complain of the overruling of his challenge for cause to any particular juror who afterwards serves on the panel, since peremptory challenges are provided to enable the defendant to secure a fair and impartial jury; and, unless he exercises them when occasion arises, he is in a sense leading the court into error which he might have cured.

**Jury—Competency—Formation or Expression of Opinion.**

3. Section 121, subd. 2, L. O. L., makes the existence of a state of mind on the part of a juror which satisfies the trier that he cannot try the issue impartially and without prejudice to the substantial rights of a party a disqualification, and Section 123, L. O. L., provides that a juror's formed or expressed opinion upon the merits is of itself insufficient to sustain a challenge, unless the court is satisfied that the juror cannot disregard his opinion and try the case impartially. On a trial for murder defendants challenged for cause, on the ground of a formed opinion, a juror who was not acquainted with deceased, or with defendants or any persons in the neighborhood, who had heard some reports of the inquest and some statements about confessions by defendants, and who admitted an opinion conditioned on the truth of what he had heard, but who, on a searching examination by the defendants, stated that he could give fair and impartial consideration to the testimony as to such confessions, that he would have to hear the evidence before

---

*The question as to when a confession is voluntary is the subject of an elaborate note in 18 L. R. A. (N. S.) 768.

As to the admissibility of evidence obtained by aid of an involuntary or inadmissible confession, see note in 53 L. R. A. 402.    REPORTER.

reaching a conclusion, and that he would take the law from the court and render verdict according to the evidence, and who was instructed by the court that the State would have to prove premeditation in order to convict of murder in the first degree. Held, in view of the advantage of the presiding judge in seeing and hearing the juror, and in the absence of anything to show that the trial had not been fair, there was no error in overruling the challenge.

### Homicide—Evidence—Deliberate and Premeditated Malice— "Murder in the First Degree."

4. Under Section 1893, L. O. L., defining murder in the first degree as a homicide with deliberate and premeditated malice, or in the commission or attempt to commit any rape, arson, robbery, or burglary, the State, charging a killing while in the commission of such other offenses, need not prove deliberate or premeditated malice; but, as malice is not necessarily excluded by such other offenses in which homicide results, defendants cannot complain if the State elects to predicate the murder upon a killing with deliberate and premeditated malice.

### Homicide—Evidence—Motive—Possession of Money.

5. While the State is not bound to prove a motive for homicide, it may do so, and may show that decedent was in the possession of money at the time of his death and that defendants had like property immediately afterwards, although such circumstances create no presumption, and are open to explanation.

### Criminal Law—Evidence—Confessions While in Custody.

6. The fact that a confession is made to an officer, or while the defendant is in custody, does not render it inadmissible as a confession.

### Criminal Law—Evidence—Confessions—Promise or Inducement.

7. In a prosecution for murder, it appeared that, while one of the defendants was in jail on another charge, a newspaper reporter interviewed him in the presence of a detective after telling defendant that he was a reporter, that he need not say anything, that he intended to publish what he said, and that, if called upon, he would testify in court as to what he said, and defendant, without hope or inducement, related a general history of his life and mentioned the name of deceased, upon which one of those present said: "Now, George, tell the truth about this matter. Get that load off your stomach, and you will feel better" —that the other defendant was subpoenaed by the grand jury,

told by the district attorney that he was not bound to say anything, and that, if he did, it might be used against him, and related to one of the grand jury his participation in the homicide. Held, in view of the warnings given to both defendants, that the adjuration to the first contained no element of compulsion or inducement, and that the statements of both were admissible as voluntary confessions.

### Criminal Law—Appeal—Discretion of Trial Judge—Admission of Evidence.

8. The admissibility of a confession is in the first instance a mixed question of law and fact to be determined by the trial judge, to whose discretion much latitude must be given, so that his decision thereon will not be disturbed, unless there is apparent and manifest error.

### Criminal Law—Admissibility of Evidence—Other Offenses and Character of Accused.

9. In a trial for murder, where statements of one of the defendants were introduced to the effect that the other had confessed to him complicity in the killing of various persons in different parts of the State, and where the evidence for defendants tended to show that they were below the average grade of intelligence, the refusal to permit defendants to show in detail that one of them had no connection with any of the homicides mentioned in his statement to the other on the ground that it indicated that that defendant had a weakness of mind, and a propensity to confess crimes of which he was innocent, so as to raise a probability that the confession in evidence was also false, was proper; since the argument applied only to the weight to be given to such a confession, and since its admission would have confused the issue, and led to an irrelevant investigation.

### Criminal Law—Evidence—Confessions—Nature and Sufficiency as Admission of Guilt.

10. A confession is admissible as an exception to the general rule against hearsay, and after admission defendant may show that he made no such confession, and may also give evidence tending to establish his innocence of the crime charged, or to overcome the evidence given against him by the prosecution.

### Criminal Law—Trial—Instructions—Insanity.

11. In a trial for murder, where the State introduced confessions by the defendants, and the defendants thereupon intro-

duced evidence tending to show that one of them was weak-minded, and had a propensity to confess crimes of which he was innocent, an instruction on insanity, if erroneous, was harmless.

**Criminal Law—Trial—Argument of Prosecuting Attorney.**

12. The court sustained objections by defendants to the statements of the prosecuting attorney in his closing address with a caution to the jury not to regard such statements. Held, in view of a bill of exceptions giving only the interpretation placed thereon by the defendants and not the language itself, that the statements were not reversible error.

From Benton:  JAMES W. HAMILTON, Judge.

Statement by MR. JUSTICE BURNETT.

It is charged in the indictment here that:

"The said George Humphrey and Charles Humphrey on the second day of June, 1911, in the county of Benton and State of Oregon, then and there being, and then and there acting together, did then and there unlawfully, feloniously, purposely, and of deliberate and premeditated malice kill one Eliza Griffith, by then and there unlawfully, feloniously, purposely, and of deliberate and premeditated malice strangling her, the said Eliza Griffith, whereof the said Eliza Griffith then and there died, contrary to the statute. * *"

A trial upon the general issue resulted in a verdict of guilty as charged, and from the consequent judgment the defendants have appealed.          AFFIRMED.

For appellant there was a brief over the names of *Mr. George W. Denman, Mr. E. W. Wilson, Mr. H. J. Parkison, Mr. John A. Jeffrey* and *Mr. Charles E. Lenon,* with an oral argument by *Mr. Jeffrey.*

For the State there was a brief over the names of *Mr. Edwin Bryson,* District Attorney, *Mr. W. S. McFadden* and *Mr. Arthur Clark,* with oral arguments by *Mr. Bryson* and *Mr. Clark.*

MR. JUSTICE BURNETT delivered the opinion of the court.

Among others there were six jurors, including one John Slane, who were examined about their qualifications to sit in the trial. To each of the six the defendants interposed a challenge for cause, which was overruled. On this action of the court the defendants predicate their first assignment of error. The bill of exceptions reports only the testimony relating to these six jurors, and shows that five of them were challenged peremptorily by the defendants. These five peremptory challenges are the only ones that were used by the defendants so far as disclosed by the bill of exceptions. Mr. Slane was accepted by the court and served as a juror at the trial of the case, notwithstanding the defendants had challenged him for cause.

1. It is well settled that, although the court sitting in the trial of the cause may have erred in overruling a challenge for cause, yet the error is cured by the exercise of a peremptory challenge against the juror in question. The right of peremptory challenge is conferred upon the defendant to use at his own discretion. Neither party has the right to the services of any particular juror. The law provides various means in the form of challenges to enable a party to exclude from the panel an objectionable juror, and this is the only method of preventing the use in every instance of the first 12 names drawn from the box as the trial jury. If a party chooses to use his peremptory challenges in this process of exclusion, he cannot complain if the court has erred in overruling his challenge for cause to a juror thus excused. This disposes adversely to the contention of the defendants of all questions raised as to the five jurors of the six mentioned, and granting that all of the five were in fact biased or prejudiced so as to disqualify them,

yet it does not affect the case because they did not serve on the jury.

It remains to consider the error asserted as to John Slane, who was one of the jury which convicted the defendants. The bill of exceptions presents a case where defendants had exhausted only five of their peremptory challenges when their objection for cause against Slane was overruled, and it does not show that the defendants ever used any of the remaining seven peremptory challenges allowed them by the statute. Some authorities hold that, if the court erred in overruling the challenge for cause, the defendant is not bound to cure the erroneous rulings of the court by using such challenges. Their doctrine is that a defendant has a right to have his challenges for cause tried agreeably to the rules of law, and that it is an invasion of his right when he is called upon to obviate the error at the expense of one or more of his peremptory challenges, although it does not exhaust his quota. *People* v. *Bodine,* 1 Denio N. Y.) 281; *Freeman* v. *People,* 4 Denio (N. Y.) 9, 31 (47 Am. Dec. 216) ; *Brown* v. *State,* 57 Miss. 424; 10 Cent. Law J. 376; *North Chicago Elec. Ry. Co.* v. *Moosman,* 82 Ill. App. 172.

2. On the other hand, by far the larger number of authorities hold that, until a defendant's peremptory challenges are exhausted, he is not in a position to complain of the action of the court in overruling his challenge for cause to any particular juror who afterwards served on the panel. These later cases seem to teach that the law has provided not only challenges for cause, but also those peremptory to enable the defendant to protect his right to a fair and impartial jury; that, unless he avails himself of all those privileges whenever the occasion arises, he is in a sense leading the court into error which he might have cured if he had been so disposed, and not having obviated the error when he could he is in no

Sig. 18

position to complain. *State* v. *Elliott*, 45 Iowa, 486; *State* v. *Davis*, 41 Iowa, 311; *Barnes* v. *Newton*, 46 Iowa, 567; *State* v. *McQuaige*, 5 S. C. 429; *St. Louis Ry. Co.* v. *Lux*, 63 Ill. 523; *Bowman* v. *State*, 41 Tex. 417; *Tuttle* v. *State*, 6 Tex. App. 556; *Sharp* v. *State*, 6 Tex. App. 650; *McKinney* v. *State*, 8 Tex. App. 626; *Tooney* v. *State*, 8 Tex. App. 452; *Krebs* v. *State*, 8 Tex. App. 1; *Grissom* v. *State*, 8 Tex. App. 386; *Palmer* v. *People*, 4 Neb. 68; *State* v. *Gill*, 14 S. C. 410; *Preswood* v. *State*, 3 Heisk. (Tenn.) 468; *Haggard* v. *Petterson*, 107 Iowa, 417 (78 N. W. 53); *Pool* v. *M. M. Ins. Co.*, 94 Wis. 447 (69 N. W. 65); *Commonwealth* v. *Fry*, 198 Pa. 379 (48 Atl. 257); *Yecker* v. *San Antonio Tract Co.*, 33 Tex. Civ. App. 239 (76 S. W. 780). On the state of the record touching the number of peremptory challenges used and those unemployed when the jury was finally completed, the weight of authority on this question would decide the contention of the defendants against them in respect to the jury.

3. We do not, however, rest the decision of this cause as to the juror Slane upon the basis of unused peremptory challenges. That juror was a farmer who had lived in the State about five years and in the county of Benton about sixteen months. He was not acquainted with the deceased or the defendants, or with any person in the neighborhood where the homicide occurred. He had heard some reports of the inquest held over the body of the deceased, and also some statements about the confessions attributed to the defendants. He testified that he had a decision in one way conditioned on the truth of what he had heard. He responded to a question by the defendants' counsel that his mind was in such a condition that he could give a fair and impartial consideration to the testimony regarding the facts as to whether or not the alleged confessions were freely and voluntarily made. He said he had no fixed opinion in the case, and would have to hear the evidence before reaching a

conclusion. The counsel for the defendants very search-
ingly and at much length examined him, propounding
various hypothetical questions calling for his opinion
based thereon. These questions were very much involved
in their terms, and contained various fine shades of dis-
tinction, and the answers to some of them indicated that
the juror might find the defendant guilty of murder in
the first degree without the State having proven delib-
eration and premeditation. The judge, however, ex-
plained to him that jurors are subject to the direction
of the court as to the law of the case, and that it would
be necessary as a matter of law for the State to prove
beyond a reasonable doubt that there was deliberation
and premeditation on part of the defendants before they
could be found guilty of murder in the first degree. The
juror explained on his part that he did not clearly under-
stand the questions propounded by the defendants' coun-
sel, but that in a trial of the case he would take the law
from the court, weigh the evidence fairly under his oath,
and render a verdict accordingly, without prejudice. He
was examined at great length also by the State on the
challenge for cause interposed by the defendants, and
the court overruled the challenge. A careful reading
of all the testimony on his *voir dire* impresses us with the
belief that the court committed no error in accepting him
as a juror.

The disqualification urged by the defendants against
Mr. Slane is defined by our Code as:

"The existence of a state of mind on the part of the
juror in reference to the action or to either party which
satisfies the trier in the exercise of a sound discretion
that he cannot try the issue impartially and without
prejudice to the substantial rights of the party challeng-
ing and which is known in this Code as actual bias."
Section 121, subd. 2, L. O. L.

Respecting the trial of a challenge for actual bias, Section 123, L. O. L., provides that:

"Although it should appear that the juror challenged has formed or expressed an opinion upon the merits of the cause from what he may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied from all the circumstances that the juror cannot disregard his opinion and try the issue impartially."

Any intelligent thinking man will form some opinion with reference to any statement about any important matter. Having no duty in connection with the transaction under consideration, this opinion may be satisfactory to him, and might require evidence to change it. It is only when it is such a fixed attitude of mind that it would control his actions in some appreciable degree when he assumes the new relation of a trier of the fact involved in litigation that such a mental state will disqualify him. A broad-minded intelligent citizen who has never acquired any impression either directly or indirectly about the issue to be tried would be an ideal juror; but in these days, when the means of communication through the press and otherwise is so extensive among the people, it would be impracticable to attain to this high standard for jurors in the administration of justice. To meet such conditions, the law has been established in this State as noted in the provisions of the Code to which allusion has been made. The judge who presided at the trial of the cause is a jurist of wide experience, known ability, and strict integrity. Such a man with the juror before him is far better qualified than the members of this court, with only the paper record at hand, to determine the ultimate question of whether or not the juror will disregard the previous opinion he has formed, and fairly and impartially try the case within the meaning of the statute on that subject. Aside from the advantage which the presiding judge had of seeing the

juror, hearing him testify, and of observing his manner, we are satisfied from the history of the trial presented by the bill of exceptions that the court committed no error in overruling the defendants' challenge for cause as to the juror Slane. For all that appears in the bill of exceptions, the defendants had a fair and impartial jury within the meaning of the constitution to determine the issue between them and the State. *State* v. *Armstrong,* 43 Or. 207 (73 Pac. 1022) ; *State* v. *Saunders,* 14 Or. 300 (12 Pac. 441) ; *Kumli* v. *S. P. Co.,* 21 Or. 505 (28 Pac. 637) ; *State* v. *Ingram,* 23 Or. 434 (31 Pac. 1049) ; *State* v. *Olberman,* 33 Or. 556 (55 Pac. 866) ; *State* v. *McDaniel,* 39 Or. 161 (65 Pac. 520) ; *State* v. *Megorden,* 49 Or. 259 (88 Pac. 306: 14 Ann. Cas. 130) ; *State* v. *Caseday,* 58 Or. 429 (115 Pac. 287).

4. The defendants also charged that the court erred in admitting testimony tending to show that the decedent had a large sum of money in her possession at the time of her death, that the defendants secured it from her, and that the defendant, George Humphrey, expended money at Philomath the day after the homicide. They assign as a reason in support of this objection that there is no allegation in the indictment that the homicide occurred in the commission of robbery, rape, arson, or burglary. Capital homicide is defined by Section 1893, L. O. L., thus:

"If any person shall purposely and of deliberate and premeditated malice or in the commission or attempt to commit any rape, arson, robbery or burglary kill another, such person shall be deemed guilty of murder in the first degree."

True enough, if the assailant in the commission of rape, arson, robbery, or burglary kill his victim, the slayer is guilty of murder in the first degree, and, the State having so alleged, the crime will be excused from the proof of deliberate or premeditated malice. Malice afore-

thought, however, is not necessarily excluded by the presence of rape, arson, robbery, or burglary in the criminal transaction in which the death of the victim ensues, and the defendant cannot complain if, passing over these crimes, the prosecution elects to predicate the murder upon a killing accompanied by deliberate and premeditated malice.

5. The prosecution is not bound to prove a motive for the criminal act charged in the indictment. It is permitted to do so, however; and, as throwing light upon such motive, it is allowable for the State to show that the decedent was in the possession of money at the time of her death, and that the defendants had like property immediately afterwards. No presumption of law can be founded upon such facts. They are circumstances open, of course, to explanation, but which the jury is entitled to consider on the question of motive. As to the possession of the money first by the decedent and subsequently by a defendant, the following authorities are instructive: *State* v. *Hansen,* 25 Or. 391 (35 Pac. 976: 36 Pac. 296) ; *Commonwealth* v. *Robinson,* 146 Mass. 571 (16 N. E. 452) ; *Musser* v. *State,* 157 Ind. 423 (61 N. E. 1) ; *People* v. *Ascher,* 126 Mich. 637 (86 N. W. 140) ; *People* v. *Antony,* 146 Cal. 124 (79 Pac. 858) ; *State* v. *Rice,* 7 Idaho, 762 (66 Pac. 87).

6, 7. The defendants further complain that the court erred in admitting in evidence certain confessions said to have been made by them. It appears by the bill of exceptions that the defendant George Humphrey was arrested in Washington County and put in jail on a charge of cruelty to animals. While thus incarcerated, a newspaper reporter accompanied by a detective went to interview George, and seems to have conducted the conversation in presence of the detective. He began by telling the prisoner that he was a reporter, who desired to interview him, that he did not wish to bore him, and

that he was not obliged to say anything, but, if he were willing to talk, the reporter would be glad to hear what he had to say; that he intended to publish what was said, and, if called upon in court, would testify about all that George told him. The latter having expressed a willingness to talk to the reporter, they began a conversation, which lasted over four or five hours. Both the reporter and the detective testified that no hope or inducement whatever was offered to George to get him to confess, and that no compulsion or threat whatever was employed for that purpose or any other. His interlocutor began by asking him where he was born, and solicited from him a general history of his life, and finally, upon inquiring who his neighbors were when he lived near Philomath, the defendant George Humphrey spoke of the decedent, Mrs. Griffith. This was the first time that her name had been mentioned during the whole interview. The only thing in any way savoring of compulsion occurred after the defendant George had made several incriminating statements about his connection with the homicide. Apparently for the purpose of getting a fuller statement, one of those present said: "Now, George, tell the truth about this matter. Get that load off your stomach, and you will feel better." In the conversation which continued that defendant gave a circumstantial account of how he committed the murder. Some days after arrest of George Humphrey, Charles Humphrey, the other defendant, was subpœnaed before the grand jury of Washington County, and was told by the district attorney, then present, that they were investigating the killing of Mrs. Griffith, which happened in Benton County. He was informed in substance by the district attorney with particularity that he was not obliged to say anything; that any statement which he made should be voluntary, and that if he were indicted, as he probably would be, all he said would be used against him; that

he was at liberty to make a statement or not as he chose, and the testimony further shows that no threat was made or inducement offered to secure his statement. After considerable conversation in presence of the Washington County grand jury, that body adjourned for supper, and afterwards some of them met the defendant Charles in the office of the district attorney in Hillsboro, where the conversation was continued, and finally, after many questions, he also gave an account of his participation in the killing of Mrs. Griffith. Both defendants objected to the introduction of these confessions in evidence on the ground that they were not shown to have been made voluntarily by either of them. The contention is that under the circumstances of George being under arrest, and that Charles was examined before a grand jury, and both were subjected to long and searching questioning, amounts to such duress as to destroy the value of the confession on the ground that it was not voluntary. The fact that a confession was made to an officer or while the defendant was in custody does exclude from evidence such avowals of guilt. *State* v. *Blodgett,* 50 Or. 329 (92 Pac. 820) ; *State* v. *Scott,* 63 Or. 444. (128 Pac. 441). A careful examination of all the evidence reported in the bill of exceptions shows that great care was taken to impress upon the minds of the defendants that any statements they might make must be made voluntarily on their part, and that their accounts of the affair would be used against them in case of their indictment, and, further, that no threat whatever was made or compulsion employed to induce the statements. After he had partially committed himself, there is *no compulsion in* the statement: "Now, George, tell the truth about this matter. Get that load off your stomach, and you will feel better." The inducement which would vitiate the confession must be one coming from some other person such as a promise or statement that it would be better

for the prisoner to confess as in the Wintzingerode case, 9 Or. 153. His feeling better or worse was a matter of his own conscience, over which as he knew no other person had any control, so that such a statement would not amount to unjustifiable influence. The adjuration quoted contains no element of compulsion or inducement nor any intimation of anything in the nature of a promise or a threat coming from any one else. It was left entirely to his own option whether or not he should make the statement.

8. The admissibility of a confession is in the first instance a mixed question of law and fact to be determined by the judge who hears the case. In the nature of things much latitude must be given to that judicial officer in the decision of such questions. His judgment on that point is not to be disturbed, unless there is apparent and manifest error. *State* v. *Rogoway*, 45 Or. 601 (78 Pac. 987: 81 Pac. 234: 2 Ann. Cas. 431) ; *State* v. *Blodgett,* 50 Or. 329 (92 Pac. 820).

9, 10. On behalf of the defendants, evidence was introduced tending to show that they were rather below the average grade of intelligence; that they never took the lead in conversation, and were in the habit of assenting to any statement made in their presence. The reporter mentioned was then recalled, and, over objection of the State, allowed to testify to an interview which he had with the defendant Charles Humphrey, in which Charles narrated that George had confessed to him complicity in the killing of various persons in different parts of the State. The defendants then proposed to show in detail that George had no connection with any of the homicides mentioned in his statement to Charles as reported by the latter to the newspaper representative, who, in turn, detailed the statement of Charles on the witness stand. The court excluded the offer, and of this action the defendants predicate error. They argue that these statements traced

back through the press agent to Charles and from him
to George indicate that the latter had a weakness of
mind evidenced by a propensity to confess crimes of
which he was innocent, and that thus could be raised a
strong probability that the confession which was given
in evidence against him was also false.  A confession is
admissible as an exception to the general rule against
hearsay testimony.  When one has been admitted in evi-
dence, the way is open for the defendant to show that
he made no such confession.  He may also give evidence
*aliunde* tending to establish his innocence of the crime
charged or to overcome the evidence given against him
by the prosecution.  In our judgment, however, it will
not avail him to say in effect to the jury:

"However true it may be that I made the confession
introduced in evidence against me on this trial, neverthe-
less I am in the habit of making false statements in such
matters, and therefore you must not believe this alleged
confession."

In any event, the argument would apply only to the
weight to be given to such a confession, and not to its
admissibility.  The attitude of the defendants on this
branch of the case was to use secondhand hearsay testi-
mony with respect to George's statements as self-serving
declarations, and then to enter upon a collateral inquiry
concerning all the homicides thus detailed.  It would have
confused the issue, and have been an unprofitable and
irrevelant investigation.  The court committed no error
in excluding it.

11. Based upon the testimony about the grade of
intelligence of the defendants, the court on its own motion
instructed the jury on insanity as a defense to crime.  The
bill of exceptions states that at the end of the charge of
the court the counsel for the defendant said, "I have an
exception to the instructions regarding insanity."  The
part of the instructions objected to is not segregated in
the bill of exceptions, but the defendants argued here

that the court was wrong in speaking about insanity at all. The defendants, however, had thrown their defective mental conditions into the scale, and the court had a right to instruct the jury on that subject. At the worst, it was a harmless error.

12. The record shows that the counsel for the defendants objected to statements which he imputes to the prosecutor in his closing address to the jury. The court in every instance sustained his objection. Only the interpretation placed by defendants' counsel on the language used by the prosecutor, and not the language itself, is quoted in the bill of exceptions. Considering that the speech complained of is not quoted, and the court sustained the objections and cautioned the jury on that subject not to regard the statements imputed to counsel for the State, we are of the opinion that this matter furnishes no grounds for a reversal of the judgment.

The defendants claim that the court erred in submitting to the jury at all the question of whether or not they were guilty of murder in the first degree. Without reciting the disgusting details of the case, it is sufficient to say that there was ample testimony in the record authorizing this issue to be submitted to the jury.

The judgment of the court below is affirmed.

                                        AFFIRMED.