Submitted March 20, affirmed August 19, 2020

Devon DORN,
*Plaintiff-Appellant,*

*v.*

THREE RIVERS SCHOOL DISTRICT,
*Defendant-Respondent.*

Josephine County Circuit Court
16CV01104; A167763

473 P3d 122

Plaintiff brought this action to recover damages caused by defendant's breach of a settlement agreement. The trial court ruled on summary judgment that defendant had breached the agreement. Thus, the only issue for the jury was damages. During *voir dire*, plaintiff asked one juror (Juror R) for his opinion on same-sex marriage. Juror R answered, "I don't think it's a marriage. You know I don't, whether they have some legal right to a union, I don't know, that's not my decision." Plaintiff requested that Juror R be excused for cause. The trial court instead told the entire panel about the duty of a juror to be fair and impartial. The trial court concluded by asking if any juror would be unable to put his or her views aside. There is nothing in the record that indicates Juror R stated at that time that he could not. At the conclusion of *voir dire*, the parties discussed their peremptory challenges off the record and in chambers. The trial court then read the dismissed jurors. Plaintiff did not use his any of his peremptory challenges on Juror R. Consequently, he was empaneled as a juror for the trial. Plaintiff raises two assignments of error. In her first assignment of error she challenges the trial court's failure to excuse Juror R for cause. In her second assignment of error she argues that the trial court committed plain error when it failed to require that the parties' in-chambers exercise of their peremptory challenges be recorded. *Held*: With regard to her first assignment of error, plaintiff did not meet her burden to establish a record for the Court of Appeals to review, because when a party fails to use an available peremptory challenge to cure any prejudice resulting from a trial court's adverse for-cause ruling, that party fails to establish that the court's ruling prejudiced him or her. With regard to her second assignment of error, plaintiff did not preserve her argument and any error that may have resulted was not plain.

Affirmed.

Pat Wolke, Judge.

Steven Wilker, Robert Koch, Megan Reuther, and Tonkon Torp LLP, and Kelly Simon and ACLU Foundation of Oregon, Inc., filed the briefs for appellant.

Luke W. Reese, Shayna M. Rogers, and Garrett Hemann Robertson PC, filed the brief for respondent.

Before Lagesen, Presiding Judge, and Kamins, Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Affirmed.

## KISTLER, S. J.

Plaintiff brought this action to recover damages caused by defendant's breach of a settlement agreement. The trial court ruled on summary judgment that defendant had breached the agreement, and it empaneled a jury to determine whether defendant's breach had damaged plaintiff. On appeal, plaintiff argues that the trial court erred in not granting her motion to excuse a juror for cause. We conclude that plaintiff failed to create a record establishing that the court's for-cause ruling prejudiced her. We accordingly affirm its judgment.

Defendant is a school district in Josephine County, which employed plaintiff as a special education teacher for approximately 11 years. At the end of that period, defendant terminated plaintiff's employment for cause, plaintiff requested an administrative hearing, and the parties agreed to settle their dispute. One of the conditions of the settlement agreement was that defendant would provide an agreed letter of reference that plaintiff could use in seeking work and that, if defendant received any inquiries about plaintiff's work, defendant would respond consistently with the agreed letter of reference.

Plaintiff applied for work as a special education teacher with the Medford School District and had a positive interview. Medford contacted defendant regarding plaintiff, and defendant initially responded consistently with the agreed letter of reference. However, when asked whether defendant would rehire plaintiff, defendant's representative said, "No." Defendant's representative added that plaintiff had had problems with "missing work and attendance issues." After that conversation, Medford did not offer plaintiff the job. However, a couple of weeks after the school year began, another special education position came open in Medford, Medford interviewed plaintiff again, and it hired her for that position. At the end of the school year, Medford elected not to rehire plaintiff for another year.

As noted, the trial court ruled on summary judgment that defendant breached the settlement agreement when it told Medford it would not rehire plaintiff, and the

question before the jury was whether defendant's breach had caused plaintiff to lose any wages and employment benefits. One of the factual disputes that remained to be decided at trial was whether Medford's decision not to rehire plaintiff resulted from defendant's initial adverse recommendation or from Medford's observation of plaintiff's performance during the year she worked there. Another was whether defendant's adverse recommendation to Medford affected plaintiff's ability to obtain a special education position with other school districts in the area.

Before *voir dire* began, the trial court ruled on two mirror-image motions *in limine* that affected the issues discussed during *voir dire*. Essentially, the court agreed with plaintiff that she could introduce evidence of her successes as a teacher when she worked for defendant. The court, however, cautioned plaintiff that, if she chose to introduce evidence of her successes while working for defendant, she could open the door to defendant's introducing evidence of the problems that had led to her termination, which the court summarized as "the alcohol, the, the record keeping, maybe the, the DUII with the students, stuff like that." Plaintiff accordingly began *voir dire* knowing that, depending on her choices, evidence concerning her prior alcohol use and its effect on her teaching when she worked for defendant could be admitted at trial.

During *voir dire*, plaintiff's lawyer asked prospective jurors about their views on three topics that sparked a diversity of responses.[1] First, her lawyer asked jurors about their views on alcohol, which led to a discussion of three issues—any use of alcohol, alcoholism as a disease, and drinking and driving. Second, plaintiff's lawyer asked, without any preface, "Does anybody have anything against gay people?" When one of the jurors asked what he was talking about, the lawyer disclosed that his client is LGBTQ. Finally, plaintiff's lawyer asked a related but separate question— whether the prospective jurors had an opinion on same-sex marriage.[2] The lawyer's questions led to a predictable range

---

[1] The lawyers who represent plaintiff on appeal did not represent her at trial.

[2] Perhaps plaintiff's lawyer asked prospective jurors about their opinions on same-sex marriage as a way of testing their views on sexual orientation, although

of responses. Some jurors responded that those issues would not affect their ability to be impartial; others explained that it could be difficult to put their personal views aside; and the remainder fell somewhere in the middle.

Plaintiff moved to excuse several prospective jurors for cause. The trial court granted all plaintiff's motions to excuse jurors for cause, with four exceptions—Juror B, Juror R, Juror M, and an unidentified juror based on her answers regarding alcohol use. On appeal, plaintiff assigns error only to the trial court's ruling on Juror R. We accordingly summarize Juror R's responses briefly. Plaintiff asked Juror R for his opinion on same-sex marriage. Juror R answered, "I don't think it's a marriage. You know, I don't, whether they have some legal right to a union, I don't know, that's not my decision." He added, "But I don't feel like it's a marriage." Plaintiff's lawyer then asked, "You wouldn't hold my client's same sex marriage against her in this trial," to which Juror R replied, "No." Having said that, Juror R volunteered that he had a problem with "tenure" and "drinking and driving," which he explained caused him to lean towards the defense.[3]

At that point, plaintiff moved to excuse Juror R for cause, and the trial court posed a question to Juror R and the other jurors. The court noted the three issues that Juror R had mentioned—same-sex marriage, tenure, and drinking and driving. It explained that the "great thing about American justice is that we try to treat everybody equally." It told the prospective jurors that, whatever personal views they might have about same-sex marriage, people selected to serve as jurors would need to put their own views aside and

his later explanation for the question never raised that possibility. Substantively, plaintiff's marriage was not relevant to the issues before the jury. Additionally, there was no suggestion that plaintiff's sexual orientation affected defendant's decision to terminate her or its adverse recommendation to Medford.

[3] Juror R's reference to "tenure" appears surprising. However, in describing plaintiff's claims to the prospective jurors, her lawyer had explained that, as a result of her status as a tenured teacher, plaintiff sought an administrative hearing to contest defendant's decision to terminate her employment. Although any claim plaintiff had against defendant for terminating her tenured employment was resolved in the settlement agreement, Juror R may have mistakenly understood that deciding plaintiff's claim for breach of the settlement agreement would have entailed deciding whether defendant had impermissibly terminated plaintiff's tenured employment because of her prior episode of drinking and driving.

decide plaintiff's claim fairly and impartially. It observed that "tenure" did not appear to be much of an issue in the case, and neither did drinking and driving. The court told the jurors that they could not base their decision on any views they might have on tenure or drinking and driving; rather, the jurors could consider those issues only to the extent they were relevant to plaintiff's claim for breach of the settlement agreement. The court concluded by asking if any juror would be unable to put his or her views on those issues aside.

Two jurors raised their hands signaling that they would have trouble putting their views on those issues aside. The trial court questioned those jurors briefly and excused both for cause. The record does not show that Juror R signaled that he would be unable to put his views on those issues aside. Given Juror R's response, plaintiff's lawyer said nothing further regarding Juror R during *voir dire*. Plaintiff's lawyer turned his attention instead to another juror and began questioning her about her response to one of his questions.

After plaintiff's lawyer finished questioning the jurors, defendant's lawyer questioned the prospective jurors briefly and passed them for cause. The parties then met with the trial court in chambers where they exercised their peremptory challenges. That discussion was not recorded. However, at the end of that discussion, the trial court identified the names of the persons selected to serve on the jury. From that, we can tell that Juror R served on the jury while Jurors B and M did not. Because the only other juror whom plaintiff unsuccessfully had moved to excuse for cause was not named, we cannot tell whether she served on the jury.

Midway through trial, before the second day of testimony began, plaintiff's lawyer expressed misgivings about jury selection. He could not remember which juror had said what; however, his general impression was that a fair number of unidentified jurors—apparently several more than he had sought to excuse for cause—were biased against his client because of her disability (alcoholism) or her orientation or both. When the trial court asked plaintiff's lawyer "how many of those people that expressed reservations about

alcohol use actually got on this jury," the lawyer replied, "Man I'm telling you people were flying all over the place. I couldn't keep track." After the trial court agreed that keeping track of jurors can be difficult, plaintiff's lawyer added, "I know the third woman in had raised her hand to something." Plaintiff's lawyer gave a similar response when asked whether any juror who had expressed reservations about sexual orientation had gotten on the jury. Plaintiff's lawyer responded there was "[t]he woman coming in third from here, I can't recall her name, I would [have removed her] if I had more p[er]emptory challenges." In responding to those questions, plaintiff's lawyer identified only the "third woman in." He did not identify Juror R, who is male, as a problematic juror.

The court noted, for the record, that it had given each side four peremptory challenges rather than the usual three. At the conclusion of the midtrial colloquy, all that plaintiff's lawyer pressed from his belated misgivings about jury selection was a request for a cautionary instruction on sexual orientation. The trial court said that it was willing to give such an instruction and asked plaintiff to submit one. Defendant, for its part, supported plaintiff's request.

After plaintiff presented her case, defendant elected not to put on any evidence. In closing argument, defendant acknowledged, as the trial court had ruled, that it had breached the settlement agreement when it told Medford it would not rehire plaintiff. It also acknowledged that its breach had caused plaintiff not to get the first job with Medford for which she had applied. Specifically, defendant acknowledged that its breach had caused plaintiff to lose approximately $5,000 in wages for the roughly four-week period between the time that she would have started with Medford if defendant had not breached the agreement and the time that she actually began working for Medford. Defendant argued, however, that its breach had not caused plaintiff any further damages. The jury returned a verdict in plaintiff's favor for $5,000.

On appeal, plaintiff raises two assignments of error. Her first assignment of error challenges the trial court's failure to excuse Juror R for cause. In her opening brief,

plaintiff sought to deflect a concern that she had failed to use all her peremptory challenges and, as a result, had failed to preserve her challenge to Juror R. *See State v. Wright*, 294 Or App 772, 773-74, 431 P3d 471 (2018), *rev den*, 364 Or 294 (2019) (explaining that, to perfect a for-cause challenge to a juror, the record must show that, having used all a party's peremptory challenges, the party was compelled to accept an objectionable juror). Plaintiff argued that, although she had not asked that the parties' exercise of their peremptory challenges be recorded, statements that her lawyer made during the midtrial colloquy, noted above, demonstrated that she had used all her peremptory challenges and that a juror whom she had challenged for cause (Juror R) remained on the jury. For that reason, she contended, she had complied with *Wright* and preserved her challenge to Juror R. Defendant did not contend otherwise.

We are persuaded by statements that plaintiff's lawyer made during the parties' midtrial colloquy that plaintiff used all her peremptory challenges and did not fail to preserve her challenge to Juror R for that reason. We questioned, however, whether plaintiff failed to preserve her challenge to Juror R for two other reasons, and we asked the parties to file supplemental briefs addressing those concerns. *See State v. Wyatt*, 331 Or 335, 345-47, 15 P3d 22 (2000) (explaining that an appellate court can consider whether an appellant preserved an issue even though the respondent conceded preservation). First, we asked whether plaintiff needed to say something more after the court's question arguably rehabilitated Juror R, such as renewing her objection to him or arguing that Juror R's response was insufficient to show he had been rehabilitated, to preserve her objection. Second, we asked whether the principles stated in *Wright* barred plaintiff from challenging the trial court's for-cause ruling on Juror R when she could have but did not use an available peremptory challenge to strike him from the jury.

We begin with the second question. As we read plaintiff's supplemental brief, she raises essentially two responses to that question. Her first response is procedural. She notes that, in its answering brief, defendant conceded that plaintiff had preserved her challenge to Juror R, and

she argues that defendant's concession is conclusive. The Supreme Court has explained, however, that a party's concession that an issue was preserved does not preclude an appellate court from assessing preservation independently. *Wyatt*, 331 Or at 345-46. If, as plaintiff argued in her opening brief, a party must comply with *Wright* to preserve an objection to a for-cause ruling, then *Wyatt* makes clear that defendant's concession does not bar us from considering that issue.[4]

Moreover, even if *Wright* and the cases it followed focused on a failure to prove prejudice rather than a failure of preservation, we are not bound to accept defendant's concession that plaintiff was prejudiced. *See Cervantes v. Dept. of Human Services*, 295 Or App 691, 693, 435 P3d 831 (2019) (so stating). In this case, plaintiff's opening brief put the issue whether she had complied with *Wright* in play. And, even if *Wright* turns on the absence of prejudice rather than a failure of preservation, the connection between the two concepts is sufficiently close that we decline to view defendant's concession as conclusive. That is particularly true when the parties have briefed, as we requested, how the principles stated in *Wright* apply in this context.

We accordingly turn to how the principles in *Wright* apply here, the other issue that plaintiff addresses in her supplemental brief. Synthesizing Oregon case law, *Wright* explained that "a party seeking to challenge a trial court's denial of a for-cause challenge to a potential juror must create a record establishing prejudice in *two* distinct respects." 294 Or App at 773 (emphasis in original). "First, a party must exhaust all peremptory challenges." *Id.* "Second, even after a party exhausts all peremptory challenges, the

_____

[4] Plaintiff argues that footnote 2 in *State v. Gollas-Gomez*, 292 Or App 285, 423 P3d 162 (2018), points in a different direction. *See id.* at 287 n 2. However, we can read our footnote in *Gollas-Gomez* as plaintiff does only if we conclude that we took an unannounced departure from the Supreme Court's holding in *Wyatt*, 331 Or at 346. Neither the footnote in *Gollas-Gomez* nor the briefs filed in that case compel that conclusion. Rather, for all those sources reveal, the number of jurors whom the defendant in *Gollas-Gomez* unsuccessfully challenged for cause could have exceeded his allotted peremptory challenges. *See State v. Megorden*, 49 Or 259, 263-64, 88 P 306 (1907) (explaining when a party who has exhausted all his or her peremptory challenges may challenge a subsequent for-cause ruling on appeal).

litigant must create a record that he or she 'was compelled to accept an objectionable juror.'" *Id.* at 774 (quoting *State v. Megorden*, 49 Or 259, 263-64, 88 P 306 (1907)).

Plaintiff argues that a party will fail to comply with *Wright*'s first principle only when the party fails to use all its allotted peremptory challenges. *See State v. Farrar*, 309 Or 132, 158, 786 P2d 161, *cert den*, 498 US 879 (1990) (illustrating that problem). We agree with plaintiff that a party will not comply with *Wright*'s first principle if it uses fewer than its allotted challenges. As we explain below, however, the first principle stated in *Wright* requires something more. But, even if we assume that plaintiff's interpretation of *Wright*'s first principle is correct, the second principle that *Wright* stated poses a barrier for her.

That principle provides that, "even after a party exhausts all peremptory challenges, the litigant must create a record that he or she 'was compelled to accept an objectionable juror.'" *Wright*, 294 Or App at 774 (quoting *Megorden*, 49 Or at 263-64). As the court used the phrase "objectionable juror" in *Megorden*, it referred to a juror to whom a party unsuccessfully had objected for cause. 49 Or at 264. The court explained that, in the absence of a for-cause objection, "it must be presumed that [the juror] was qualified in every respect." *Id.*; *accord State v. Douglas*, 310 Or 438, 441, 800 P2d 288 (1990) (explaining that, having exhausted all his peremptory challenges, the defendant could not complain because "he [ha]d not object[ed] to any of the jurors who ultimately heard the case").

In this case, plaintiff could have used her four peremptory challenges to strike Juror R and the other three jurors whom she had unsuccessfully moved to excuse for cause. She did not, however, use an available peremptory challenge to strike Juror R. It is difficult to see how plaintiff can argue that she "was compelled to accept" Juror R when she could have but did not use an available peremptory challenge to remove him from the jury. A consideration of the history of the two principles set out in *Wright* confirms that conclusion.

The Oregon Supreme Court adopted the two principles summarized in *Wright* in the late nineteenth and

early twentieth centuries. *See State v. Humphrey*, 63 Or 540, 545, 126 P 824 (1912) (interpreting *Wright*'s first principle); *Megorden*, 49 Or at 263-64 (interpreting *Wright*'s second principle); *Ford v. Umatilla County*, 15 Or 313, 324, 16 P 33 (1887) (on rehearing) (discussing both principles), *overruled in part on other grounds by State ex rel Douglas County v. Sanders*, 294 Or 195, 655 P2d 175 (1982).[5] The court adopted those principles in the context of cases that involved individual *voir dire* of prospective jurors. *See State v. Rathie et al.*, 101 Or 339, 348-49, 199 P 169, *reh'g den*, 101 Or 368 (1921); *Megorden*, 49 Or at 263. Specifically, the lawyers for the parties in those cases examined and the court ruled on each prospective juror sequentially. After examining a prospective juror, a party could object to the juror for cause. If that objection were overruled, the party would then have to decide whether to use a peremptory challenge to strike that juror before examining the next juror. *See id.* The parties proceeded in that fashion until 12 jurors were seated.

It was in that context that the court considered in *Humphrey* the first principle that we later summarized in *Wright. See Humphrey*, 63 Or at 545-46. Specifically, the court considered whether and when a party is required to use an available peremptory challenge to cure an adverse for-cause ruling. The court first rejected the minority view that the failure to use an available peremptory challenge to cure an adverse for-cause ruling will never bar a party from challenging the for-cause ruling on appeal. *Id.*[6] The court then explained *when* a party will be obligated to use an available peremptory challenge to cure an adverse for-cause ruling. It reasoned that, "*until* a defendant's peremptory challenges are exhausted, he is not in a position to complain

---

[5] After discussing the relationship between the first and second principles later summarized in *Wright*, the court avoided deciding in *Ford* exactly how those two principles related to each other. It explained that the juror whom the appellant had challenged in *Ford* was biased, if at all, towards the appellant—an issue that made the appellant's challenge only a technical one. 15 Or at 325-26.

[6] In *Humphrey*, the court described the minority and majority views but based its decision on a different ground. 63 Or at 545-46. Later, the court repeated and followed, without discussion, the majority view set out in *Humphrey. Mount v. Welsh et al.*, 118 Or 568, 578-79, 247 P 815 (1926). To simplify the discussion, we refer to *Humphrey* doing what *Mount* later accomplished—rejecting the minority and adopting the majority view that *Humphrey* described. *See Mount*, 118 Or at 578-79.

of the action of the court in overruling his challenge for cause to any particular juror who afterwards served on the panel." *Id.* at 545 (emphasis added). That is, in the context of individual examination of jurors, the court made clear that a party must use an available peremptory challenge to cure an adverse for-cause ruling at the point at which it exercises its peremptory challenges or be barred from challenging the ruling on appeal. That was true if the party failed to use a peremptory challenge to cure an adverse for-cause challenge when the first juror was examined without regard to whether the party later used all or less than all its allotted peremptory challenges. *See id.*

The court explained that the cases

> "seem to teach that the law has provided not only challenges for cause, but also those peremptory to enable the defendant to protect his right to a fair and impartial jury; that, unless he avails himself of those privileges *whenever* the occasion arises, he is in a sense leading the court into error which he might have cured if he had been so disposed, and not having obviated the error when he could he is in no position to complain."

*Id.* at 545-46 (emphasis added); *see Mount v. Welsh et al.*, 118 Or 568, 579, 247 P 815 (1926) (following the majority rule described in *Humphrey*). Put differently, a party who does not use an available peremptory challenge to cure an adverse for-cause ruling "*whenever* the occasion arises" may not challenge the for-cause ruling on appeal. *Humphrey*, 63 Or at 545-46 (emphasis added).

To be sure, a party who, at the end of the day, has not used all his or her peremptory challenges cannot argue that a trial court's adverse for-cause ruling prejudiced him or her. But, as *Humphrey* and *Mount* make clear, *Wright*'s first requirement stands for more than that. It requires that a party use an available peremptory challenge to cure any error in the trial court's for-cause ruling whenever the occasion arises or be barred from challenging that ruling on appeal. As the Supreme Court of Indiana explained,

> "To preserve for appeal a claim that the trial judge erred in denying a challenge for cause, the [party] *must* demonstrate that he or she either used a peremptory challenge

> to remove the challenged juror or had already exhausted his or her allotment of peremptories. * * * It is not sufficient that peremptories are eventually exhausted if such challenges were available when the for-cause challenge was denied but the juror was not struck."

*Whiting v. State*, 969 NE2d 24, 29-30 (Ind 2012) (emphasis in original; citations and footnote omitted). *Cf. Ross v. Oklahoma*, 487 US 81, 108 S Ct 2273, 101 L Ed 2d 80 (1988) (holding that a similar state law, which requires that a party use an available peremptory challenge to cure an erroneous for-cause ruling, does not violate the federal constitution).[7]

The second principle summarized in *Wright* complements the first. Again, its operation is best understood in the historical context in which it was articulated. In the context of individual examination of jurors, a party could exhaust his or her peremptory challenges before all 12 jurors were selected. *See Rathie*, 101 Or at 348-49 (considering what happened when the defendants had exhausted their peremptory challenges after the tenth juror was seated but before the eleventh and twelfth seats were filled); *Megorden*, 49 Or at 263 (considering that issue when the defendant had exhausted his peremptory challenges "[a]fter 11 jurors had been taken and before the last juror was called"). In that situation, *Megorden* recognized that a party could challenge the trial court's for-cause ruling on appeal only if, having previously exhausted all his or her peremptory challenges, the party was compelled to accept an objectionable juror. *See id.* at 263-64; *Wright*, 294 Or App at 774 (stating that requirement).

In *Rathie*, for example, the defendants sought to challenge the "action of the [trial] court in overruling [two of the] defendants' challenges for cause, thereby compelling [the] defendants to exercise peremptory challenges in

---

[7] As the Court's discussion of the way that Oklahoma conducted individual *voir dire* illustrates, the procedures for selecting juries can vary from one jurisdiction to another. However, the common principle expressed in *Humphrey*, *Whiting*, and *Ross* is that states may require, as a matter of state law, that a party use a peremptory challenge to cure any prejudice from an adverse for-cause ruling if a peremptory challenge is available when the party exercises its peremptory challenges or be barred from later challenging the for-cause ruling on appeal.

respect to such jurors." 101 Or at 348. The court explained that the defendants had exhausted their peremptory challenges after the tenth juror had been selected but before the eleventh and twelfth jurors were examined. *Id.* at 348-49. Four prospective jurors were questioned to fill those last two seats. The defendants objected to two of those four prospective jurors for cause, and the trial court sustained the defendants' objections. *Id.* at 349. The defendants did not object to the other two prospective jurors, who completed the jury. *Id.* On appeal, the Supreme Court declined to consider the defendants' objections to the trial court's earlier for-cause rulings—*i.e.*, the for-cause rulings that had required the defendants to exhaust their peremptory challenges before the eleventh and twelfth jurors were examined. It reasoned: "It is the rule in this state that [any] error of the court in refusing to allow a challenge to a juror for cause is waived if the party objecting, after exhausting his [or her] peremptory challenges, accepts without objection other jurors to complete the panel." *Id.*

In *Douglas*, the court explained that the principle rests on a failure to establish prejudice rather than waiver. 310 Or at 441-42. However, the point remains the same. A party who fails to use an available peremptory challenge to cure any prejudice resulting from a trial court's adverse for-cause ruling has failed to establish that the court's ruling prejudiced him or her. Conversely, if a party is compelled to accept an objectionable juror after it has exhausted its peremptory challenges, then it has established prejudice and may challenge the trial court's for-cause rulings on appeal. As that history makes clear, the two principles summarized in *Wright* reflect two sides of the same coin: They ask whether the party could have used an available peremptory challenge to cure the trial court's adverse for-cause ruling or whether the party had exhausted its peremptory challenges and subsequently was "compelled to accept an objectionable juror." *Megorden*, 49 Or at 263-64. Only in the latter situation has the party established prejudice.

To be sure, a party is free to use peremptory challenges to remove a juror whom the party had not challenged for cause. However, if a party unsuccessfully challenged a juror for cause and did not use an available peremptory

challenge to strike that juror when the party exercised his or her peremptory challenges, then *Humphrey*, *Megorden*, and *Rathie* make clear that the party has not established that the court's for-cause ruling prejudiced him or her and may not challenge that ruling on appeal.

In this case, the trial court did not conduct individual *voir dire* as the trial courts did in *Humphrey*, *Megorden*, and *Rathie*. Rather, in this case, the lawyers examined the jurors as a group and moved to excuse jurors for cause in open court before exercising any peremptory challenges in chambers. Plaintiff did not request that the parties' exercise of their peremptory challenges be recorded, and the record reveals only a fragmented picture of how the parties exercised their peremptory challenges in chambers. The record reveals that each side had four peremptory challenges rather than the usual three. The record also reveals that, although plaintiff had second thoughts about jury selection midway through trial, she unsuccessfully moved to excuse only four jurors for cause in open court—Juror B, Juror R, Juror M, and an unidentified juror based on her answers about alcohol use. The record accordingly shows that, when plaintiff exercised her four peremptory challenges in chambers, she could have used those challenges to remove all four of those jurors. She did not do so, however, but left Juror R on the jury. She thus failed to use an available peremptory challenge to remove Juror R when the occasion arose and cannot establish that any ruling the trial court made on Juror R prejudiced her. Put differently, she was not compelled to accept Juror R.

We recognize that questions may arise in other cases regarding how jury selection rules developed in the context of individual *voir dire* during the late nineteenth and early twentieth centuries apply to current methods of jury selection. However, this case does not provide an occasion to attempt a resolution of those questions. All that this record reveals is that plaintiff could have but did not use an available peremptory challenge to remove Juror R. Given this record, we cannot say that plaintiff met her obligation of "creat[ing] a record establishing prejudice." *Wright*, 294 Or App at 773. Parties, of course, are free to use their peremptory challenges to remove jurors whom they did not

move to excuse for cause. However, as *Humphrey* and *Wright* establish, a party may not challenge an adverse for-cause ruling on appeal if the party could have used an available peremptory challenge to cure any prejudice flowing from that ruling.

Plaintiff raises a second assignment of error. She argues that the trial court committed plain error when it failed to require that the parties' in-chambers exercise of their peremptory challenges be recorded. Plaintiff acknowledges that she did not ask the trial court to record the parties' exercise of their peremptory challenges, nor did she object to the failure to record that discussion. She argues, however, that "the trial court erred because courts have a duty to maintain an adequate record for appeal under both state statute and general principles of due process." As we understand plaintiff's argument, she contends that the trial court's breach of what she describes as its "duty to maintain an adequate record for appeal" constitutes plain error that she may raise on appeal even though she failed to raise a timely objection. *See* ORAP 5.45(1) (providing that an appellate court may, in its discretion, reach "plain error" even though no objection was raised below).

The duty that plaintiff perceives is difficult to reconcile with our cases. We have explained that, "[o]rdinarily, it is the appellant's burden to furnish a sufficient record to demonstrate that the trial court[] erred." *State v. Y. B.*, 296 Or App 781, 785, 439 P3d 1036 (2019) (quoting *State v. Lavert*, 164 Or App 280, 283, 991 P2d 1067 (1999) (brackets in original)); *see Ferguson v. Nelson*, 216 Or App 541, 549-50, 174 P3d 620 (2007) (collecting cases). "Included in that burden is the obligation to put on the record an account of any critical proceedings occurring off of the record." *Y. B.*, 296 Or App at 785. While there are exceptions to that general rule, our cases make clear that the parties' exercise of their peremptory challenges is not one of them. Rather, as we explained in *Wright*, "[t]hrough a series of cases stretching back nearly a century, Oregon courts have established that a party seeking to challenge a trial court's denial of a for-cause challenge to a potential juror must create a record establishing prejudice ***." 294 Or App at 773. As *Wright* establishes, the party appealing a trial court's for-cause

ruling is responsible for creating a record that establishes prejudice or, at a minimum, objecting to the trial court's refusal to create such a record.

Plaintiff argues that *State v. Turnidge (S059155)*, 359 Or 364, 419-21, 374 P3d 853 (2016), *cert den*, ___ US ___, 137 S Ct 665 (2017), and ORS 19.420(3) lead to a different conclusion. In our view, neither authority that plaintiff cites advances her argument. The question in *Turnidge* was whether the trial court erred in destroying existing jury questionnaires. 359 Or at 420. The court neither considered nor addressed who had the obligation to create the jury questionnaires in the first instance.[8] ORS 19.420(3) also does not help plaintiff. That subsection addresses what occurs when "an appeal cannot be prosecuted, by reason of the loss or destruction, through no fault of the appellant, of the reporter's notes or audio records[.]" ORS 19.420(3) addresses, as *Turnidge* does, the loss or destruction of an existing record. It does not address who had the obligation to create the record in the first place. Neither authority on which plaintiff relies provides a reason to question what *Wright* recognized—that the party challenging a trial court's for-cause ruling is responsible for creating a record establishing that the ruling prejudiced him or her.[9]

Given our cases, we cannot say that the trial court erred, much less committed plain error, when it did not require, on its own motion, that the parties' in-chambers

___

[8] Additionally, the court explained that the defendant in *Turnidge* had not been prejudiced by the court's destruction of the questionnaires because the defendant had "an ample alternative avenue to [re]create the record that [he] now claims is missing." 359 Or at 422. The court observed that the trial court had notified the parties that it was going to destroy the questionnaires and explained that the parties could have supplemented the record with the information in the questionnaires or put the information contained in the questionnaires on the record during *voir dire*. *Id.* In this case, not only could plaintiff have asked the trial court to record the parties' in-chambers exercise of their peremptory challenges, but she could have later sought to memorialize that discussion when the court went back on the record. *See Y. B.*, 296 Or App at 785-86 (discussing ways in which a party can memorialize what occurred off the record).

[9] Although plaintiff also invokes due process, she did not object to the procedure the trial court employed on due process grounds, nor has she explained on appeal why due process would not permit states to place the burden on the parties in a civil case of making a record necessary to prosecute an appeal. Any due process error that plaintiff perceives is not plain and thus not properly before us. *See* ORAP 5.45(1).

exercise of their peremptory challenges be recorded. We accordingly decline to reach plaintiff's unpreserved second assignment of error. As explained above, the record that is before us shows that plaintiff had an available peremptory challenge that she could have but did not use to cure any error flowing from the trial court's for-cause ruling on Juror R. Because plaintiff has not established that the trial court's ruling on Juror R prejudiced her, we affirm the trial court's judgment.

Affirmed.