Argued and submitted December 13, 1996, affirmed and remanded for
resentencing in part; reversed and remanded for a new trial in part
September 17, 1997

## STATE OF OREGON,
*Respondent,*

*v.*

## EDWARD FORREST BARNES,
*Appellant.*

(95-1165; CA A91415)

945 P2d 627

Kenneth A. Morrow argued the cause for appellant. With him on the brief was Morrow, Monks & Sharp, P.C.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Chief Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendant appeals his convictions following a trial to a jury. We affirm his conviction for resisting arrest, ORS 162.315, and reverse and remand his conviction for assault in the second degree. ORS 163.175.

The charges arose following an incident at the Newport Seafood and Wine Festival in February 1994. Defendant and his wife Debra were at the marina building with another couple, Dean and Dana Chase. Defendant had had four or five glasses of wine at the festival when, around 6:00 p.m., the incident started. Newport Chief of Police Rivers testified that breaking wine glasses had become "kind of a tradition" and that the crowd at the marina numbered about 3,500, the limit the security personnel tried to maintain. Rivers heard glass being broken in the area where defendant, his wife and the Chases were. Rivers sent officers Miller and Simpson to the area. Simpson testified that he asked Dana Chase to leave, and she refused. Simpson then physically removed her and outside, after she tried to slap and kick him, Simpson told her that she was under arrest. She tried to run, and when he caught her she continued to fight. Debra Barnes then jumped on his back, as did defendant. Simpson said that Miller took defendant off his back and, as Simpson rolled over, he saw defendant throwing punches at Miller.

Paul Rose was working as a security guard. He testified that he saw a police officer coming out with a female who was yelling and screaming and that he saw her try to slap and kick the officer and try to run. Rose testified that he saw Miller go down and that Rose stepped forward with his hands out, intending to keep the crowd back. Defendant struck Rose in the right eye. Rose suffered a "blow-out fracture" of the eye socket—a fracture of a thin layer of bone at the floor of the socket. The injury resulted in double vision and required surgery. Rose still has some double vision and a "sunken" eye.

Defendant was indicted for "unlawfully and knowingly caus[ing] serious physical injury to Paul Rose" under ORS 163.175(1)(a), which provides:

"(1) A person commits the crime of assault in the second degree if the person:

"(a) Intentionally or knowingly causes serious physical injury to another[.]"

In turn, ORS 161.085(8) provides:

" 'Knowingly' or 'with knowledge,' when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists."

■ Defendant first assigns error to the denial of his requested jury instruction on assault in the second degree and to the instruction given. Defendant's requested instruction stated, in part, that, to find the crime of assault in the second degree, the state had to prove:

"3. [Defendant] caused serious physical injury to Paul Rose. Serious physical injury means a physical injury that either (1) creates a substantial risk of death, or (2) causes serious and protracted disfigurement, or (3) causes protracted impairment of health, or (4) causes protracted loss or impairment of the function of any bodily organ; and

"4. That the defendant caused said physical injury knowingly. To act knowingly in this case the defendant had to have acted with an awareness that his conduct would cause a serious physical injury. A person achieves a particular result knowingly when he is practically certain that his conduct will cause that result. A person who is aware of and consciously disregards a substantial and unjustifiable risk that a serious physical injury will occur acts recklessly, but not knowingly[.]"

■ The trial court rejected defendant's instruction, instead instructing the jury that

"a person acts 'knowingly' if that person acts with an awareness that his or her conduct is of a particular nature.[1]

"* * * * *

"Oregon law provides that a person commits the crime of Assault in the Second Degree if that person knowingly—

---

[1] The instruction is Uniform Criminal Jury Instruction No. 1032.

I've defined the term 'knowingly'—causes serious physical injury—and I've defined 'serious physical injury'—to another.

"In this case to establish Assault in the Second Degree, the State must prove beyond a reasonable doubt the following three elements:

"* * * * *

"Number three, that [defendant] knowingly caused serious physical injury to Paul Rose."[2]

Defendant argues that the statutory definitions of "intentionally," "recklessly" and "criminal negligence," ORS 161.085(7); ORS 161.085(9); ORS 161.085(10), all refer to "a result * * * described by a statute defining an offense," but that "result" is absent from the definition of "knowingly." Defendant contends, however, that assault in the second degree is a "result offense" and requires proof that the person knowingly caused serious physical injury. Defendant argues that the instructions given did not distinguish between conduct and result. He argues that the instructions must inform the jury that there must be proof beyond a reasonable doubt that he intended a serious physical injury to occur or that he was conscious of the result of the blow and was almost certain that a serious physical injury would occur. He further argues that here the instruction permitted the jury to find him guilty of assault in the second degree if they found that he knowingly struck Rose, even though he did not intend or was not almost certain that Rose would suffer serious physical injury from the blow.

The state responds that the court's elements instruction specifically stated that, to establish second-degree assault, the state had to prove that defendant "knowingly

---

[2] The court also gave the state's special instruction:

"You are instructed when knowingly suffices to establish a culpable mental state, it is also established if a person acts intentionally."

Neither party makes an argument specifically directed to that instruction. However, we note that "intent" and "knowledge" are distinct concepts under the criminal code, *State v. Francis,* 284 Or 621, 626, 588 P2d 611 (1978), and an instruction worded in terms of "intent" should not be given in a prosecution for a crime when the indictment alleges "knowledge." *State v. Van Walchren,* 112 Or App 240, 246, 828 P2d 1044, *rev den* 314 Or 574 (1992).

caused serious physical injury to Paul Rose." It argues that the court's instructions "tracked" the uniform jury instructions and relevant statutes and accurately stated the law. It contends that, given the juxtaposition of "knowingly and "caused" in the instruction, as well as the court's instruction that "a person acts 'knowingly' if that person acts with an awareness that his or her conduct is of a particular nature," the jury could not reasonably have understood the instructions to mean anything but that defendant had to be aware that his act of punching Rose in the face would cause serious physical injury. It argues that, taken as a whole, the instructions could not have been understood to mean that the state only had to prove that defendant knew he struck Rose in the face.

The drafters of the Oregon Criminal Code sought to restrict the concept of "knowingly" to awareness of the nature of one's conduct or to the existence of specified circumstances. *See State v. Jantzi*, 56 Or App 57, 60 n 1, 641 P2d 62 (1982) (citing commentary to Oregon Criminal Code of 1971 (1975 ed)). Thus, ORS 161.085(8) specifically provides that the definition of "knowledge" applies "when [knowingly] is used with respect to conduct or to a circumstance described by a statute defining an offense[.]" However, despite that general definition, "knowingly" in ORS 163.175(1)(a) is not used with respect to conduct or a circumstance. It is used instead, as defendant contends, with a *result*.

In *State v. Mayer*, 146 Or App 86, 90, 932 P2d 579 (1997), the defendant had been charged with "knowingly" subjecting the victim to sexual contact. *Id.* at 89. The statute defining the crime of sexual abuse in the first degree does not prescribe a culpable mental state, and the defendant argued that the indictment did not state an offense because it designated "knowingly" and not "intentionally" as the appropriate mental state. *Id.* We rejected the defendant's position. We noted that "knowingly" was statutorily defined as acting with an awareness of conduct or of the existence of a circumstance and concluded that, "[u]nlike homicide or assault crimes, which are defined in terms of causing death or injury, sexual abuse in the first degree is not a 'result offense.' " *Id.* at 90. We held that, because sexual abuse prohibits the conduct of touching a child in a sexual manner, an allegation that the

defendant was aware that his conduct was of a sexual nature placed the defendant within the act's prohibition. *Id.* at 91.

As we noted in *Mayer*, unlike sexual abuse, assault in the second degree under ORS 163.175(1)(a)[3] proscribes a result—causing serious physical injury. Here, the trial court instructed the jury according to the statutory definition of "knowingly" and incorporated that definition in its instructions on the elements of assault in the second degree. However, the statutory definition of "knowingly" is restricted to awareness of *conduct*; it does not define awareness as to *result*. It is the result that must be proved for the offense of assault in the second degree, and an instruction using only the statutory definition of "knowingly" does not sufficiently inform the jury of the nexus between conduct and knowledge of the result of the conduct to satisfy the elements of ORS 163.175(1)(a).

■    The state contends, however, that the trial court properly refused to give defendant's requested instruction because a court need not provide definitions of exculpatory mental states, *State v. Harper*, 132 Or App 29, 33, 888 P2d 19 (1994), *rev den* 322 Or 193 (1995), and defendant's instruction here contains a definition of "reckless" conduct. However, our *dictum* in *Harper* should not be read as standing for the broad proposition that an erroneous instruction may be given if an offered instruction contains exculpatory language. Defendant here assigned error to the giving of the instruction, which, as we have held, did not accurately state the law. Defendant's requested instruction was structured from the commentary to the Criminal Code as set out in *Jantzi*, 56 Or App at 60 n 1, and more accurately stated the requirement of defendant's knowledge of causing the prohibited result. His addition of the exculpatory sentence is not an incorrect statement of the law. *See* ORS 161.085(9) (defining reckless). Because the instruction that was given could have allowed

---

[3] The trial court concluded that one who intends the act must live with the consequences, *i.e.*, that "you take the victim[s] as you find them." However, the clear language of ORS 163.175(1)(a) does not proscribe conduct resulting in serious physical injury; it requires intentionally or knowingly causing that injury.

the jury to find defendant guilty without finding that defendant knew his act would likely cause the prohibited result, the error was not harmless.

Defendant's remaining assignments of error do not merit discussion.

Conviction for resisting arrest affirmed and remanded for resentencing; conviction for assault in the second degree reversed and remanded for a new trial.