Argued and submitted November 2, 1998, decision of Court of Appeals affirmed in part and reversed in part; judgment of circuit court affirmed September 8, reconsideration denied October 26, 1999

STATE OF OREGON,
*Petitioner on Review,*

*v.*

EDWARD FORREST BARNES,
*Respondent on Review.*

(CC 95-1165; CA A91415; SC S44787)

986 P2d 1160

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the briefs were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and David B. Thompson, Assistant Attorney General.

Kenneth A. Morrow, of Morrow, Monks & Sharp, P.C., Eugene, argued the cause and filed the brief for respondent on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Leeson, and Riggs, Justices.**

VAN HOOMISSEN, J.

---

** Kulongoski, J., did not participate in the consideration or decision of this case.

## VAN HOOMISSEN, J.

Defendant appeals his convictions of second-degree assault, ORS 163.175(1)(a), and resisting arrest, ORS 162.315. He contends that the trial court erred in refusing to give his proffered jury instruction and in failing to instruct the jury correctly. The Court of Appeals affirmed his conviction of resisting arrest and reversed his conviction of second-degree assault. *State v. Barnes*, 150 Or App 128, 945 P2d 627 (1996). The dispositive issue on review is whether the trial court erred in instructing the jury with respect to the culpable mental state of "knowingly" on the charge of second-degree assault. We conclude that the trial court did not err. Accordingly, we affirm in part and reverse in part the decision of the Court of Appeals.[1]

We take the facts from the Court of Appeals' opinion:

"The charges arose following an incident at the Newport Seafood and Wine Festival in February 1994. Defendant and his wife Debra were at the marina building with another couple, Dean and Dana Chase. Defendant had had four or five glasses of wine at the festival when, around 6:00 p.m., the incident started. Newport Chief of Police Rivers testified that breaking wine glasses had become 'kind of a tradition' and that the crowd at the marina numbered about 3,500, the limit the security personnel tried to maintain. Rivers heard glass being broken in the area where defendant, his wife and the Chases were. Rivers sent officers Miller and Simpson to the area. Simpson testified that he asked Dana Chase to leave, and she refused. Simpson then physically removed her and outside, after she tried to slap and kick him, Simpson told her that she was under arrest. She tried to run, and when he caught her she continued to fight. Debra Barnes then jumped on his back, as did defendant. Simpson said that Miller took defendant off his back and, as Simpson rolled over, he saw defendant throwing punches at Miller.

"Paul Rose was working as a security guard. He testified that he saw a police officer coming out with a female who was yelling and screaming and that he saw her try to

---

[1] Defendant did not petition for review of the Court of Appeals' decision affirming his conviction of resisting arrest.

slap and kick the officer and try to run. Rose testified that he saw Miller go down and that Rose stepped forward with his hands out, intending to keep the crowd back. Defendant struck Rose in the right eye. Rose suffered a 'blow-out fracture' of the eye socket—a fracture of a thin layer of bone at the floor of the socket. The injury resulted in double vision and required surgery. Rose still has some double vision and a 'sunken' eye."

*Id.* at 130.

Defendant was indicted for "unlawfully and knowingly caus[ing] serious physical injury to Paul Rose." ORS 163.175 provides, in part:

"(1) A person commits the crime of assault in the second degree if the person:

"(a) Intentionally or knowingly causes serious physical injury to another[.]"

ORS 161.085 provides, in part:

"As used in chapter 743, Oregon Laws 1971, [the 1971 Oregon Criminal Code] and ORS 166.635, unless the context requires otherwise:

"* * * * *

"(8) 'Knowingly' or 'with knowledge,' when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists."

At trial, defendant requested that the jury be instructed that

"[t]o act knowingly in this case the defendant had to have acted with an awareness that his conduct *would cause* a serious physical injury. A person achieves a particular result knowingly when he is practically certain that his conduct *will cause* that result. A person who is aware of and consciously disregards a substantial and unjustifiable risk that a serious physical injury will occur acts recklessly, but not knowingly[.]"

(Emphasis added.) The trial court rejected defendant's proffered instruction.[2] Instead, the court relied on Uniform Criminal Jury Instruction 1032 (describing "knowingly") and instructed the jury that

> "a person acts 'knowingly' if that person acts with an awareness that his or her conduct is of a particular nature.
>
> "* * * * *
>
> "Oregon law provides that a person commits the crime of Assault in the Second Degree if that person knowingly— I've defined the term 'knowingly'—causes serious physical injury—and I've defined 'serious physical injury'—to another.
>
> "In this case to establish Assault in the Second Degree, the State must prove beyond a reasonable doubt the following three elements:
>
> "* * * * *
>
> "Number three, that [defendant] knowingly caused serious physical injury to Paul Rose."

On appeal, defendant argued that the trial court erred in refusing to give his proffered jury instruction and in failing to instruct the jury correctly. The Court of Appeals agreed and reversed, explaining:

> "The drafters of the Oregon Criminal Code sought to restrict the concept of 'knowingly' to awareness of the nature of one's conduct or to the existence of specified circumstances. * * * Thus, ORS 161.085(8) specifically provides that the definition of 'knowledge' applies 'when [knowingly is] used with respect to conduct or to a circumstance described by a statute defining an offense[.]' However, despite that general definition, 'knowingly' in ORS 163.175(1)(a) is not used with respect to conduct or a circumstance. It is used instead, as defendant contends, with a *result*.
>
> "* * * * *

---

[2] In rejecting defendant's proffered instruction, the trial court concluded that one who "knowingly" assaults another must live with the consequences, *i.e.*, that "you take the victim[s] as you find them."

"[A]ssault in the second degree under ORS 163.175(1)(a) proscribes a result—causing serious physical injury. Here, the trial court instructed the jury according to the statutory definition of 'knowingly' and incorporated that definition in its instructions on the elements of assault in the second degree. However, the statutory definition of 'knowingly' is restricted to awareness of *conduct*; it does not define awareness as to *result*. It is the result that must be proved for the offense of assault in the second degree, and an instruction using only the statutory definition of 'knowingly' does not sufficiently inform the jury of the nexus between conduct and knowledge of the result of the conduct to satisfy the elements of ORS 163.175(1)(a)."

*Barnes*, 150 Or App at 133-34 (emphasis in original; footnote omitted). The court then held:

"Because the instruction that was given could have allowed the jury to find defendant guilty without finding that defendant knew his act would likely cause the prohibited result, the error was not harmless."

*Id.* at 134-35.[3] We granted the state's petition for review on this issue of first impression.

On review, the state contends that the Court of Appeals erred in holding that the trial court's instructions were insufficient. The state argues that the instructions given, which quoted verbatim both the statutory elements of second-degree assault and the statutory definition of "knowingly," were a correct statement of the law that sufficiently apprised the jury of the factual issues that it had to address to find defendant guilty. The state further argues that it was required to prove only that defendant acted with an awareness of the nature of his conduct, *i.e.*, that his conduct was assaultive and likely to cause physical injury, and that his conduct, in fact, caused the victim serious physical injury.

---

[3] The Court of Appeals opined in *dictum* that defendant's proffered instruction "more accurately stated the requirement of * * * causing the prohibited result." *Barnes*, 150 Or App at 134. The court ultimately held that the trial court's error was not harmless, because the jury could have found defendant guilty without finding that he knew his act "would likely cause" the prohibited result. *Id.* at 135. Although it applied only a "would likely cause" standard, the court did not explain why the trial court committed reversible error in refusing defendant's proffered instruction that set out a "practically certain that his conduct will cause" standard.

■ Defendant responds that the definition of "knowingly" in ORS 161.085(8) has no application to ORS 163.175(1)(a) because the statutory definitions of "intentionally," "recklessly," and "criminal negligence," ORS 161.085(7), ORS 161.085(9), and ORS 161.085(10),[4] refer to a "result * * * described by a statute defining an offense," but that a "result" is absent from the definition of "knowingly" set out in ORS 161.085(8). Defendant posits that second-degree assault is a "result" crime that requires proof beyond a reasonable doubt that he acted with an awareness that his conduct would cause a serious physical injury or that it was practically certain that his conduct would cause that result. Defendant argues that, because the trial court's instructions did not distinguish between "conduct" and "result," the instructions permitted the jury to find defendant guilty of second-degree assault if it found only that he knowingly had assaulted Rose and, in fact, Rose had been seriously injured. Thus, the sole issue presented on review is the sufficiency of the instructions given, not the sufficiency of the evidence to support the conviction of second-degree assault. We review for error as a matter of law. *State v. Moore*, 324 Or 396, 427, 927 P2d 1073 (1996).

---

[4] ORS 161.085 provides, in part:

"As used in chapter 743, Oregon Laws 1971, and ORS 166.635, unless the context requires otherwise:

"* * * * *

"(7) 'Intentionally' or 'with intent,' when used with respect to a result or to conduct described by a statute defining an offense, means that a person acts with a conscious objective to cause the result or to engage in the conduct so described.

"* * * * *

"(9) 'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

"(10) 'Criminal negligence' or 'criminally negligent,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

■ Generally, parties are entitled to have a proffered instruction given based on their theory of the case if the instruction correctly states the law. *State v. McBride*, 287 Or 315, 319, 599 P2d 449 (1979). If a proffered instruction is refused, however, then there is no error if the instruction is not a correct statement of the law. *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998); *see also State v. Nefstad*, 309 Or 523, 542, 789 P2d 1326 (1990) (trial court properly refused proffered instruction because it was "not correct"). There also is no error if the substance of the proffered instruction, even if correct, was covered fully by the trial court's other instructions. *Hernandez*, 327 Or at 106. An error in refusing to give a proffered instruction requires reversal only if the instructions that were given cause prejudice by substantially affecting the rights of the party requesting the refused instruction. *State v. Williams*, 313 Or 19, 38, 828 P2d 1006 (1992). In determining whether a trial court's instructions accurately state the law, the instructions are read as a whole. *State v. Thompson*, 328 Or 248, 266, 971 P2d 879 (1999); *State v. Rogers*, 313 Or 356, 383, 836 P2d 1308 (1992). Defendant is not entitled to reversal merely because he believes that his proffered instruction stated the law more clearly than did the trial court's instructions, if the instructions given correctly and completely addressed the issues. *See State v. Montez*, 324 Or 343, 362, 927 P2d 64 (1996) (no error in refusing to give requested instruction if the instruction given adequately addresses the subject of the requested instruction). We first consider whether the trial court correctly instructed the jury, because, if it did, then the court did not err in refusing to give defendant's proffered instruction. *See Rogers*, 313 Or at 383 (court not required to give instruction in the particular form requested by defendant when the instruction given accurately stated the law).

■ In the construction of a statute, this court seeks to determine the intention of the legislature. ORS 174.020. In doing so, we use the methodology set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), which directs us first to look to the text of the statute. *Id.* at 610-11. Although the text of a statutory provision is the best evidence of legislative intent, at the first level of analysis we also consider the context of the statutory provision, which

includes other provisions of the same statute and other related statutes, as well as the preexisting decisional law and the statutory framework within which the law was enacted. *Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto*, 322 Or 406, 416-17, 908 P2d 300 (1995), *modified on recons* 325 Or 46, 932 P2d 1141 (1997). If the legislative intent is clear after that analysis, then further inquiry is unnecessary. *PGE*, 317 Or at 611. If the intent of the legislature is not clear from the text and context inquiry, then the court will move to the second level of analysis, which is to consider legislative history to inform the court's inquiry into legislative intent. *Id.* at 611-12.

Generally, Oregon's assault statutes, ORS 163.160 *et seq.*, classify assaults according to: (1) the defendant's state of mind (intentional, knowing, reckless, or criminally negligent); (2) the effect of the assault on the victim (physical injury or serious physical injury); and (3) whether the defendant used a deadly or dangerous weapon. That statutory scheme creates a hierarchy of crimes based on those factors and assigns a sanction to each crime reflecting the legislature's view of the gravity of each combination of circumstances. We turn to the text and context of ORS 163.175(1)(a).

As noted, that statute provides that a person commits the crime of second-degree assault if the person "knowingly causes serious physical injury to another." ORS 163.175(1)(a) does not require *expressly* that the state prove that a defendant acted with an awareness that his conduct would cause a serious physical injury to another or that he was practically certain that his conduct would cause that result. As used in this context, "knowingly" could mean that a defendant acted with an awareness of the *result* that would follow from his conduct. However, "knowingly" also could mean that a defendant acted with an awareness that his *conduct* was assaultive. Moreover, nothing in ORS 163.175(1)(a) or in the other assault statutes indicates that, as used in this context, the word "knowingly" is to be given a meaning different from the meaning of "knowingly" set out in ORS 161.085(8), which, by its terms, expressly applies to ORS 163.175(1)(a) "unless the context requires otherwise."

Other than ORS 161.085(8), no statute defines the term "knowingly" for purposes of ORS 163.175(1)(a).

The Court of Appeals concluded that the "knowingly causes" wording in ORS 163.175(1)(a) must be construed only as result-oriented and, because the "knowingly" definition in ORS 161.085(8) addresses only conduct and circumstances, it is not a sufficient definition. *Barnes*, 150 Or App at 134. The court concluded that the definition of "knowingly" in ORS 161.085(8) must not be used because the context requires otherwise. We disagree. Although, as used in ORS 163.175(1)(a), "knowingly" could refer to knowledge of the result that followed from defendant's conduct, nothing requires that nonstatutory interpretation of "knowingly," because the other plausible interpretation of the wording "knowingly causes" noted above is available.

◼ Some ambiguity is created because ORS 163.175(1)(a) defines second-degree assault in terms of "knowingly causes," *i.e.*, in wording that appears to be result-oriented, while ORS 161.085(8) provides a definition of "knowingly" that addresses only conduct or circumstances. Because we conclude that the intent of the legislature is not clear from the text and context inquiry, we move to the second level of analysis, which is to consider legislative history to inform our inquiry into legislative intent. *PGE*, 317 Or at 611-12. When the court reaches legislative history, it considers it along with text and context to determine whether all of those together make legislative intent clear. *Id.*

The statutory provisions at issue here were enacted as part of the 1971 Criminal Code revision and have remained essentially unchanged since that time. The Commentary to the Proposed Criminal Code, Final Draft and Report—1970, Criminal Law Revision Commission (Commentary) discloses that the statutes defining the various culpable mental states were based on comparable provisions of New York statutes.[5] Although those statutes generally follow section 2.02 of the Model Penal Code, an important exception is the definition of "knowingly." Commentary at 10. The

---

[5] *See State v. Chakerian*, 325 Or 370, 376-78, 938 P2d 756 (1997) (noting that the Commentary is part of the legislative history of the revised criminal code and not part of the context for purposes of *PGE* analysis).

Commentary notes that the definition of the term "knowingly"

> "was changed by the New York reporters *to eliminate any reference to the result of the conduct and to restrict the term to awareness of the nature of one's conduct* or of the existence of specified circumstances (*e.g.*, the property is stolen, that one has no right to enter a building, *etc.*)."

(Emphasis added.) In sum, the drafters of the New York statutes rejected the Model Penal Code's two-pronged definition of "knowingly" that applied that term both to an awareness of conduct or circumstances, and to an awareness of a potential result. The drafters of the 1971 Criminal Code followed New York and eliminated the result of the conduct alternative from the definition of "knowingly."

Thus, unlike the definitions for "intentionally," "recklessly," and "criminally negligent," the definition of "knowingly" addresses only "conduct" and "circumstances" and does not also include a reference to "result." Even though the drafters of the 1971 Criminal Code enacted several "knowingly cause" assault provisions, they specifically omitted from the definition of "knowingly" the wording that would have prescribed a knowledge requirement for the result element of those offenses.

The Court of Appeals concluded that the ORS 161.085(8) "knowingly" definition cannot be applied to the "knowingly causes" element of ORS 163.175(1)(a). *Barnes*, 150 Or App at 134. The fundamental problem with that approach is that no statute provides an alternative definition of "knowingly," and it is clear that the legislature considered *and specifically rejected* the Model Penal Code definition on which defendant relies. Moreover, to adopt defendant's proffered instruction would be to insert into ORS 161.085(8) by way of judicial construction the very definition that the legislature specifically rejected. That cannot be done. *See* ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted * * *.").

Construing ORS 163.175(1)(a) and ORS 161.085(8) together according to their express terms and in context with the related assault statutes, in a prosecution for assault in the second degree, the state needs to prove only that defendant was aware of the assaultive nature of his conduct and that his conduct in fact caused the victim serious physical injury. In this case, the trial court instructed the jury using the wording of ORS 163.175(1)(a) and ORS 161.085(8). Because that instruction adequately conveyed to the jury the legal standards to be applied, the trial court was not required to provide any further instruction, and the court properly refused to give defendant's proffered instruction.

We hold that the trial court's instructions were correct. Therefore, the trial court did not err either in instructing the jury or in refusing to give defendant's requested instruction.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed.