No. 647 July 23, 2025 57

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SARAH ELAINE DOWD,
*Defendant-Appellant.*

Benton County Circuit Court
22CR14010; A180773

Locke A. Williams, Judge.

Argued and submitted December 30, 2024.

James Brewer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. On the briefs were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General.

Before Tookey, Presiding Judge, Kamins, Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Reversed and remanded with instructions to merge defendant's convictions for fourth-degree assault and first-degree criminal mistreatment into a single conviction for first-degree criminal mistreatment; otherwise affirmed.

**KISTLER, S. J.**

Defendant appeals a judgment of conviction for first-degree criminal mistreatment, fourth-degree assault, and strangulation. She argues that the trial court erred in instructing the jury and in failing to merge her convictions for fourth-degree assault and first-degree criminal mistreatment. We reverse and remand the judgment so that the trial court can merge the convictions for fourth-degree assault and first-degree criminal mistreatment but otherwise affirm.

The charges in this case arose out of an altercation between defendant and her 14-year-old daughter, B. There was evidence that, during an argument over a cell phone, defendant put her hands around her daughter's throat and choked her. There was also evidence of other physical injuries. On appeal, defendant does not dispute that the evidence permitted a reasonable juror to find that she committed each of the charged offenses. Defendant's first three assignments of error are directed instead at the instructions the trial court gave the jury. We begin with those assignments.

Defendant assigns error initially to the instruction defining reasonable doubt. On that issue, the trial court instructed the jury:

> "Reasonable doubt is doubt based on common sense and reason. Reasonable doubt is not an imaginary doubt. Reasonable doubt means an honest uncertainty as to the guilt of the defendant. You must return a verdict of not guilty if after careful and impartial consideration of all the evidence in the case you are not convinced to a moral certainty that the defendant is guilty."

The trial court's instruction followed defendant's requested instruction on reasonable doubt, with one exception. It omitted the last sentence that defendant had requested. The court did not tell the jury, "To achieve moral certainty, you must reach a subjective state of near certitude that the defendant is guilty."

Defendant assigns error to that omission. She argues on appeal, as she did below, that "[p]roof beyond a reasonable doubt *does* require a subjective state of near

certitude." (Emphasis in original.) Relying on *Victor v. Nebraska*, 511 US 1, 114 S Ct 1239, 127 L Ed 2d 583 (1994), and *State v. Chitwood*, 370 Or 305, 518 P3d 903 (2022), she contends that the court erred in not including her proposed sentence.

   Neither *Victor* nor *Chitwood* holds that a court must or even should use the phrase "a subjective state of near certitude" to define proof beyond a reasonable doubt. Rather, as the Court explained in *Victor*, "so long as the [trial] court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, *** the Constitution does not require that any particular words be used in advising the jury of the government's burden of proof." 511 US at 5 (internal citation omitted).

   The primary question in *Victor* was whether using a nineteenth-century phrase "moral certainty" in defining proof beyond a reasonable doubt violated due process. *See id.* at 12-13. The Court held that it did not, even though the phrase "moral certainty" is no longer commonly used. *See id.* at 16-17. Seven members of the Court agreed that the instructions given in two consolidated cases adequately defined the level of certainty that proof beyond a reasonable doubt requires. *See id.* at 15-17, 21-23 (majority); *id.* at 23 (Kennedy, J., concurring); *id.* at 23-28 (Ginsburg, J., concurring in part and concurring in the judgment). Neither the majority nor the concurring opinions identified the absence of the phrase "a subjective state of near certitude" as a constitutional defect, nor did any of those opinions conclude that the phrase was constitutionally required or even preferable. *Cf. id.* at 26-27 (Ginsburg, J., concurring in part and concurring in the judgment) (quoting with approval an instruction drafted by the Federal Judicial Center that defined proof beyond a reasonable doubt without using either "moral certainty" or "a subjective state of near certitude").

   Similarly, in *Chitwood*, the Oregon Supreme Court did not hold that a court must or should use the phrase "a subjective state of near certitude" to define proof beyond a reasonable doubt. Rather, it held that the prosecutor's argument in that case impermissibly invited the jury to use a less demanding standard of proof. 370 Or at 316-17. In reaching

that conclusion, the court used the phrase "a subjective standard of near certitude" to illustrate, as the Court had done in *Victor*, the function that proof beyond a reasonable doubt serves. *See id.*; *accord State v. Dearmitt*, ___ Or App ___, ___, ___P3d ___ (July 23, 2025) (slip op at 4-5) (relying on *Chitwood* and using the phrase "subjective state of near certitude" to explain why no reasonable trier of fact could have found a sentencing factor beyond a reasonable doubt).

The trial court's instruction in this case adequately defined the level of certainty that proof beyond a reasonable doubt requires. The concept reflected in the sentence that defendant sought to add was "'covered fully by [the] *** jury instructions given by the trial court'" and "'not necessary *** to explain the particular issue or point of law to the jury.'" *See State v. Harryman*, 277 Or App 346, 356, 371 P3d 1213, *rev den*, 360 Or 401 (2016) (quoting *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998)). The trial court did not err.

Defendant's second assignment of error is directed at the instructions on fourth-degree assault. The trial court instructed the jury:

"Oregon law provides that a person commits the crime of Assault in the Fourth Degree if the person recklessly causes physical injury to another. In this case to establish the crime of Assault in the Fourth Degree, the state must prove beyond a reasonable doubt the following elements:

"First, that the act occurred on or about March 19, 2022;

"[S]econd, that [defendant] recklessly caused physical injury to [B]; and

"[T]hird, that [defendant] was criminally negligent that her actions would result in physical injury."[1]

Defendant argues that the court erred in adding the third element regarding criminal negligence. She contends (and the state agrees on appeal) that, when a defendant is charged with recklessly causing physical injury, *State v.*

---

[1] We take the instructions from the transcript. We have divided them into paragraphs and subparagraphs to make them easier to read.

*Owen*, 369 Or 288, 505 P3d 953 (2022), does not require that the jury be instructed on criminal negligence. The parties disagree, however, whether plaintiff preserved the objection that gives rise to her assignment of error, whether the error was harmless, and, if it was not preserved and not harmless, whether we should exercise our discretion to reach it. We begin with preservation.

During trial, the state submitted a proposed jury instruction based on *Owen* that required the jury to find that B's injuries were the result of defendant's criminal negligence. Defendant's proposed instructions did not include a similar finding. Defendant explained to the trial court that, in her view, *Owen* did not require a criminal negligence instruction in fourth-degree assault cases. Ordinarily, defendant's proposed instruction, coupled with her colloquy with the court, would be sufficient to preserve the objection she raises in her second assignment of error. *See Dosanjh v. Namaste Indian Restaurant, LLC*, 272 Or App 87, 91, 353 P3d 1243 (2015) (concluding that a party's written request for a jury instruction "sufficiently preserved [the party's] challenge to the court's failure to instruct on that concept"); *cf. Yeatts v. Polygon Northwest Co.*, 313 Or App 220, 221 n 3, 496 P3d 1060 (2021), *rev den*, 369 Or 338 (2022) (submission of a uniform instruction alone did not preserve an objection when the party failed to explain the "reaso[n] for requesting the instruction").

Events that occurred after that colloquy, however, persuade us that defendant failed to preserve the objection she assigns as error. After both sides had rested, the trial court told counsel that it had reviewed the applicable cases and concluded, as the state had argued, that it should add an instruction on criminal negligence to the fourth-degree assault charge. The court then stated:

> "I will provide to each counsel now *** a copy of my proposed instructions. You can take a few minutes to review them. We'll go off record and then if you want to place any objections on the record we'll do that."

After the parties reviewed the court's proposed instructions, the court went back on the record and asked the parties if they had any objection to the proposed instructions. The state replied that it did not. The court then asked, "[D]oes

the defense have any objections?" Defense counsel replied, "No objection."

The record does not disclose what, if anything, the parties and the court discussed about the proposed instructions "off record."[2] All the record discloses is that defense counsel stated on the record that the defense had "[n]o objection" to the proposed instructions.

Given that record, we agree with the state that defendant did not preserve the objection she raises in her second assignment of error. We accordingly turn to the question whether the court's instruction constituted plain error. The Supreme Court recently clarified how the plain-error doctrine applies to an unpreserved challenge to a jury instruction. *See State v. Wiltse*, 373 Or 1, 559 P3d 380 (2024). The court explained that, if the instruction the trial court gave was incorrect, then "giving [the instruction] was error and the error is apparent on the [face of] the record." *Id.* at 10. As the court made clear, however, "[a] plain error is not necessarily a reversible error." *Id.* at 4-5. The error may be harmless. Additionally, even if the error is not harmless, a reviewing court may exercise its discretion not to reach the error for a variety of reasons. *See id.* at 22-26 (exercising the court's discretion not to reach an instructional error that may not have been harmless).

As noted, both parties agree on appeal that the trial court erred in adding a criminal negligence instruction. We think it is nonetheless helpful (perhaps more for the third assignment of error than this one) to explain why we agree that the court erred.

Two Supreme Court decisions bear on the issue: *State v. Barnes*, 329 Or 327, 986 P2d 1160 (1997), and *Owen*. In *Barnes*, the jury convicted the defendant of second-degree assault, which prohibits "knowingly caus[ing] serious

---

[2] To the extent any discussion occurred off the record, it is ordinarily "the appellant's burden to furnish a sufficient record to demonstrate that the trial court[] erred." *State v. Y. B.*, 296 Or App 781, 785, 439 P3d 1036 (2019) (internal quotation marks omitted; brackets in original). "Included in that burden is the obligation to put on the record an account of any critical proceedings occurring off the record." *Id.* Defendant has identified no reason why that ordinary rule does not apply here. *See Dorn v. Three Rivers School Dist.*, 306 Or App 103, 119, 473 P3d 122 (2020).

physical injury to another." *Barnes*, 329 Or at 330; *see* ORS 163.175(1) (defining second-degree assault). On appeal, we reversed. *See State v. Barnes*, 150 Or App 128, 945 P2d 627 (1996). We explained that the trial court's instructions permitted "the jury to find [the] defendant guilty [of second-degree assault] without finding that [the] defendant knew his act would likely cause the prohibited result," serious physical injury. *Id.* at 134-35.

On review, the Supreme Court reversed in part, holding that the jury instructions correctly described the elements of second-degree assault. *Barnes*, 329 Or at 335. It reasoned that, as used in the statute defining that offense, the term "knowingly" could mean either that the defendant "acted with an awareness of the *result* [serious physical injury] that would follow from his conduct" or that the defendant "acted [only] with the awareness that his *conduct* was assaultive." *Id.* (emphases in original). In that respect, the underlying criminal statute, ORS 163.175(1), was ambiguous.

The court then turned to the definition of "knowingly" in ORS 161.085(8), which provides that, unless the context requires otherwise, "knowingly" applies to conduct and circumstances but not the result of a defendant's conduct. *See* 329 Or at 335-37 (discussing the text and legislative history of ORS 161.085(8)). Reading the substantive prohibition and the definition of knowingly together, the court concluded that "knowingly," as used in the substantive statute defining second-degree assault, applies to the defendant's conduct but not to the result (serious physical injury) of that conduct. In approving the trial court's instruction, *Barnes* left the result element in second-degree assault without an associated mental state.

As we understand *Barnes*, its holding turns on two propositions. First, ORS 163.175(1), which defines the offense of second-degree assault, requires proof of two separate elements: (1) conduct (causing) and (2) a result (serious physical injury). Second, because the substantive statute defining second-degree assault was ambiguous as to what knowingly modifies, it did not provide context that altered the definition of knowingly in ORS 161.085(8). Reading ORS 163.175(1) and

ORS 161.085(8) together, the court concluded in *Barnes* that a defendant's acts must be "knowing" but that no mental state applies to the result of those acts. 329 Or at 338.

Eleven years after the court decided *Barnes*, it allowed review in *Owen* to consider whether *Barnes* had been correctly decided. *See* 369 Or at 290 (identifying why the court allowed review). The court declined to overrule the first part of its holding in *Barnes*—that second-degree assault consists of separate conduct and result elements and that "knowingly" applies only to the conduct element. *See id.* at 299-305. It explained that that part of *Barnes*'s holding was not "plainly erroneous." *Id.* at 305. The court held, however, that *Barnes* had erred in holding that no mental state applies to the result element in second-degree assault. *See id.* at 318 (reasoning that the result element is a material element that requires proof of an associated mental state). It followed, the court concluded, that, "unless there is an affirmative indication that the legislature intended a different mental state, the mental states of intentional, reckless, and criminal negligence will apply to result elements [in a second-degree assault charge]." *Id.* at 322.

With that background in mind, we return to the trial court's instructions on fourth-degree assault in this case. The trial court instructed the jury that the state had to prove that defendant "recklessly caus[ed] physical injury" to B. "Recklessly" does not pose the same issue that the court faced in *Barnes* and *Owen*. Unlike "knowingly," "recklessly" applies to a "result or to a circumstance." ORS 161.085(9) (defining recklessly). Because "recklessly" applies to the result of a defendant's actions, it does not leave the result element in a charge of fourth-degree assault without an associated mental state, as knowingly did.

We implied as much in *State v. Raney*, 331 Or App 693, 702-03, 702 n 5, 547 P3d 172 (2024), when we held that the trial court did not plainly err in failing to add a criminal negligence instruction to a fourth-degree assault charge based on recklessly causing physical injury. *Id.* We now confirm that, when the state charges a defendant with fourth-degree assault for recklessly causing physical injury, *Owen* does not require an additional mental state for the result

element in that offense. It follows that the trial court plainly erred in adding a criminal negligence instruction.

The parties disagree whether the error was harmless. We need not decide that issue to resolve this case. Even if adding an instruction on criminal negligence was not harmless, we still decline to exercise our discretion to reach that error. *Cf. Wiltse*, 373 Or at 24 (declining to exercise the court's discretion to reach a plain error even though the error may not have been harmless). In deciding whether to exercise our discretion to reach an unpreserved instructional error, we start from the premise that "[t]here are strong reasons for the preservation requirement." *Id.* at 22. We then consider, among other factors, the gravity of the error, whether defendant invited the error, and whether the purposes of preservation were served. *See id.* at 23-24 (considering those factors); *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991) (listing applicable factors).

We begin with the gravity of the error. On that issue, the trial court instructed the jury that it could find defendant guilty of fourth-degree assault only if it found that she "recklessly cause[d] physical injury to [B]" *and* that she was "criminally negligent that her conduct would result in physical injury." We presume that the jury followed the trial court's instructions and made both findings. *See State v. Smith*, 310 Or 1, 26, 791 P2d 836 (1990) (presuming that the jury follows the court's instructions); *State v. Purrier*, 265 Or App 618, 622, 336 P3d 574 (2014) (same). If the jury found that defendant recklessly caused physical injury to B on or about March 19, 2022, then the offense was complete. The jury's finding regarding criminal negligence was surplusage, or so it would seem.

Defendant argues, however, that the instruction could have confused the jury. That is, she contends that the jury might have erroneously understood that it did not need to find that defendant recklessly disregarded the result of her actions—namely, that she consciously disregarded a substantial risk that her actions would result in a physical injury to her daughter. Instead, defendant argues, the jury

could have found only that defendant was criminally negligent in causing her daughter's physical injury.

Defendant's argument fails to address what the court's instruction defining recklessly said. The court instructed the jury that a "person acts recklessly if that person is aware of and consciously disregards a substantial and unjustifiable risk that a particular result will occur." Given that definition of recklessly, the jury's finding that defendant recklessly caused physical injury to her daughter necessarily included a finding that defendant was reckless that a particular result would occur. The risk of jury confusion that defendant perceives is minimal at most. Put differently, the instructional error is not a grave one.

Another factor persuades us that we should not exercise our discretion to reach the instructional error that defendant's second assignment of error identifies. As noted above, having previously objected to adding a criminal negligence instruction to the fourth-degree assault charge, defense counsel changed course at the end of the trial and affirmatively told the court that the defense had "[n]o objection" to adding that instruction. The record does not disclose what, if anything, was said off the record that persuaded the defense to change its position. However, defense counsel's changed position effectively assured the trial court that the defense was comfortable with the court's instructions and would not appeal the jury's verdict based on adding a criminal negligence instruction to the fourth-degree assault charge.

Older cases have viewed such an assurance as an absolute bar to a direct appeal based on an arguably erroneous instruction. *See Clay/Luttrell v. Pay Less Drug Stores*, 276 Or 673, 677, 556 P2d 125 (1976) (holding that an erroneous jury instruction was "not a basis for reversal" when the "plaintiffs' counsel in essence informed the court that he had no objection to the court instructing jury in the language of the changed instruction"). More recent cases have considered that issue in deciding whether to exercise the court's discretion to reach a plain instructional error. *See State v. Thompson*, 308 Or App 729, 740-41, 481 P3d 921 (2021), *aff'd*

*on other grounds*, 370 Or 273, 518 P3d 923 (2022) (identifying that ground for not reaching a plain error).

We recognize that, in this case, defense counsel did not invite the trial court's error. Defense counsel initially argued against adding a criminal negligence instruction to the fourth-degree assault charge. It was only after the court told the parties that it was going to add the instruction, allowed the parties to review its proposed instructions, and gave them an opportunity to discuss those instructions off the record that defense counsel told the court that the defense had "[n]o objection" to the court's proposed instructions. *Cf. State v. Fults*, 210 Or App 150, 153, 149 P3d 1248 (2006) (reasoning that the erroneous instruction in that case did not constitute invited error), *rev'd on other grounds*, 343 Or 515, 522-24, 173 P3d 822 (2007). However, defense counsel's assurance that the defense had no objection to the court's proposed instructions cuts against exercising our discretion to reach the error. In these circumstances, we decline to exercise our discretion to reach the error and uphold the jury's verdict on fourth-degree assault. *See Thompson*, 308 Or App at 741.

Defendant's third assignment of error is directed at the trial court's instructions on strangulation. Regarding that offense, the trial court told the jury:

> "Oregon law provides that a person commits the crime of Strangulation if the person knowingly impedes the normal breathing or circulation of blood of another person by applying pressure on the throat or neck of the other person.
>
> "In this case to establish the crime of Strangulation, the state must prove beyond a reasonable doubt the following elements:
>
> "First, that the act occurred on or about March 19, 2022;
>
> "[S]econd, that [defendant] knowingly impeded the normal breathing or circulation of blood of [B]; and
>
> "[T]hird, that [defendant] was criminally negligent that her actions would impede the normal breathing or circulation of blood of [B]."

The court also modified the statutory definition of "knowingly," consistently with the parties' requested instructions. It told the jury:

"[W]hen used in the phrase in Count 3 'knowingly impeded the normal breathing or circulation of blood of [B] by applying pressure on the throat or neck of [B],' 'knowingly' means that [defendant] acted with an awareness that her application of pressure on the throat or neck of [B] was impeding the normal breathing or circulation of blood of [B]."[3]

On appeal, defendant argues that the trial court's instructions were incorrect in two respects. She contends that the trial court erred in: (1) adding the third element regarding criminal negligence and (2) omitting an element from the list of elements that the state had to prove beyond a reasonable doubt. Defendant acknowledges that she did not preserve either error, but she contends that both errors are plain and that neither is harmless. We consider each error separately.

The first instructional error that defendant identifies is similar but not identical to the error that gave rise to her second assignment of error. The instructions differ in that, in instructing the jury on strangulation, the court told the jury that it had to find that defendant acted "knowingly." Arguably, instructing the jury that it had to find that defendant "knowingly" impeded her daughter's normal breathing or circulation brings this instruction closer to the second-degree assault instruction that the court considered in *Barnes* and *Owen*.

Even though strangulation and second-degree assault both require proof that a person acted knowingly, we agree with the parties that *Barnes* does not control our interpretation of the statute prohibiting strangulation. Specifically, ORS 161.085(8) provides that "'[k]nowingly' or 'with knowledge,' when used with respect to conduct or to a circumstance described by a statute defining an offense means that a person acts with an awareness that the conduct of the person is of a nature so described ***."

The issue that ORS 161.085(8) and *Barnes* leave open is what is the "conduct *** described by [the] statute

---

[3] ORS 163.187(1) identifies several ways in which a person can commit the crime of strangulation. In this case, the state charged defendant with impeding B's normal breathing or circulation by applying pressure on B's throat and neck. The court's instructions accordingly addressed only those means of committing the offense.

defining" the offense of strangulation. On that issue, the stat-
ute defining strangulation prohibits "knowingly imped[ing]
the normal breathing or circulation" of another person. ORS
163.187(1). As we interpret that statute, it does not prohibit
only "impeding." Rather, the conduct the strangulation stat-
ute prohibits is set out in the entire verb phrase—impeding
another person's normal breathing or circulation. *Cf. State
v. Tardie*, 319 Or App 229, 232-33, 509 P3d 705, *rev den*,
370 Or 303 (2022) (assuming that the conduct that ORS
163.187(1) prohibits consists of knowingly impeding another
person's normal breathing or circulation). Because "know-
ingly" applies to the entire verb phrase, not just impeding,
there was no need to instruct the jury that the state also
had to prove that defendant "was criminally negligent that
her actions would impede the normal breathing or circula-
tion of blood of [B]." The trial court plainly erred in adding
an instruction on criminal negligence.

          We need not decide whether that error was harm-
less. Even if it was not, we decline to exercise our discretion
to reach the error. We presume, as we did in resolving defen-
dant's second assignment of error, that the jury followed the
court's instructions and found that defendant knowingly
impeded her daughter's normal breathing or circulation *and*
that she did so with criminal negligence. As before, the use
of the word "and" in the instructions required the jury to
make both findings to convict defendant of strangulation.
It follows that the jury's finding that defendant's conduct
was knowing was sufficient to prove the offense. Its find-
ing that defendant also acted with criminal negligence was
surplusage.

          Defendant, however, raises a similar response to
the one she raised in her second assignment of error. She
contends that, given the instruction on criminal negligence,
the jury could have found only that she was criminally neg-
ligent that her actions would impede her daughter's normal
breathing. The trial court's instructions, however, told the
jury that it had to find that defendant acted both know-
ingly *and* with criminal negligence. Moreover, the modified
instruction defining knowingly specifically told the jury
that the state had to prove that defendant "acted with an

awareness that her application of pressure on the throat of [B] was impeding the normal breathing or circulation of blood of [B]." That is, the instruction told the jury that knowingly applied to the entire verb phrase.

As we read the court's instructions, there was little, if any, risk that the jury did not find that defendant knowingly impeded her daughter's normal breathing or circulation. Additionally, as before, defense counsel had an opportunity to review the court's proposed instructions and told the court that the defense had "[n]o objection" to those instructions. Although the court did not tell the parties that it was adding a criminal negligence instruction to the instructions on strangulation, as it did for fourth-degree assault, the same considerations noted above lead us to decline to exercise our discretion to reach the first instructional error that defendant's third assignment of error identifies.

Defendant raises a separate objection to the court's instructions on strangulation. She argues that the instructions omitted a material element from the list of elements that the state had to prove beyond a reasonable doubt. Specifically, she notes that the list omitted the means by which defendant impeded her daughter's normal breathing or circulation—namely, "by [a]pplying pressure on [her daughter's] throat [or] neck." *See* ORS 163.187(1)(a) (setting out that element).

Defendant acknowledges that she did not preserve that objection but argues that the error is plain and not harmless. The state, for its part, does not dispute that the omission was an error. It argues, however, that the instruction, read as a whole, was not erroneous because the remainder of the instruction supplied the omitted element, that any error was harmless, and that, even if the error was not harmless, we should not exercise our discretion to reach it.

We focus initially on the state's argument that the instruction was not erroneous because the remainder of the instruction supplied the omitted element. The instruction divides into three parts: (1) a preface that correctly described all the elements of the crime of the strangulation; (2) the list of elements that the state had to prove beyond

a reasonable doubt, which omitted a material element; and (3) the court's definition of "knowingly," which included the omitted element.

The state appears to argue that the preface, which correctly set out all the elements of strangulation, supplied the omitted element. To the extent the state makes that argument, it is at odds with our cases. When a court omits a material element from a list of elements that the state must prove beyond a reasonable doubt, as the trial court did here, the state may not rely on a correct statement of the offense in the preface to remedy that omission. *State v. Petrovskiy*, 315 Or App 699, 700-01, 501 P3d 94 (2021); *State v. Hooper*, 310 Or App 715, 719-20, 487 P3d 428 (2021) (following *State v. Ramoz*, 367 Or 670, 707, 483 P3d 615 (2021)).

As the court explained in *Ramoz*, the preface provides a general overview of the offense. 367 Or at 707. A list of elements that the state must prove beyond a reasonable doubt tells the jury the specific elements it must find. *Id.* As we understand *Ramoz*, it concluded that the list of specific elements the state must prove trumps the general overview set out in the preface, which prevents the preface from supplying the element the list omitted. Following *Ramoz*, *Hooper*, and *Petrovskiy*, we cannot say that preface completely cured the omission here.

The state advances an alternative argument that the remainder of the instruction cured the omission. That argument presents a closer question. The state notes that, in listing the specific elements the state had to prove, the court told the jury that it could find defendant guilty of strangulation only if it found beyond a reasonable doubt that she acted "knowingly." The state also notes that the instructions told the jury that "knowingly," as that term applied to the offense of strangulation, required a finding that defendant "acted with an awareness that her application of pressure on the throat or neck of [B] was impeding the normal breathing or circulation of blood of [B]." It follows, the state reasons, that the jury could find that defendant acted knowingly only if it found that she was aware that "her application of pressure on the throat or neck of [B] was impeding [B's] normal breathing or circulation of blood." In that way, the

state argues, the court's instructions supplied the "omitted" element.

In considering that argument, we note, as an initial matter, that the list of elements that the state had to prove beyond a reasonable doubt included the *mens rea* element "knowingly." It follows that the state's reliance on the definition of "knowingly" does not present the same problem that its reliance on the preface does. And we agree with the state that the court's instruction on "knowingly" effectively remedied the earlier omission. The instruction, however, did so in an unorthodox way. It converted an act necessary to prove the crime (applying pressure to the throat or neck of another) into a subordinate finding on the defendant's mental state. Moreover, the fit between the modified instruction on knowingly and the remainder of the instruction on strangulation was not seamless.[4] The instruction was not a correct statement of the law. Rather, it was plainly erroneous, which leaves the question whether the error was harmless or, if not harmless, whether we should exercise our discretion to reach it.

We need not decide whether the error was harmless. Even if it was not, we decline to exercise our discretion to reach it for four reasons. *Cf. Wiltse*, 374 Or at 22-25 (considering the gravity of an error, whether the defendant invited the error, and whether the purposes of preservation were served in deciding whether to exercise the court's discretion to reach the error). The first is the gravity of the error. Were it not for the court's modified definition of "knowingly," the error in this case would be a serious one. However, in finding beyond a reasonable doubt that defendant acted knowingly, the jury found that defendant impeded her daughter's normal breathing or circulation by the "application of pressure on [her daughter's] throat." The court's instructions, taken as a whole, permitted the jury to convict defendant of strangulation only if it found the "omitted" element beyond a reasonable doubt. Although the way that the court's

---

[4] The predicate identified in the instructions for its modified definition of "knowingly" is not a perfect match with the remainder of the instructions on strangulation. The jury, however, could have found defendant guilty of strangulation only if it found that defendant acted "knowingly," as the court defined that term. It follows that the risk that the jury did not apply the modified definition of knowingly in reaching its verdict is minimal.

instructions structured the elements of strangulation was unusual, the risk that the jury failed to find all the elements is, at most, slight. *Cf. id.* at 23-24 (erroneously instructing the jury that it should presume a material fact was not a grave error when the fact was not disputed).

A second consideration points in the same direction. As explained above, we do not consider the preface to the court's instructions in determining whether the instruction constituted plain error. *See Petrovskiy*, 315 Or App at 700-01; *Hooper*, 310 Or App at 719. However, in deciding whether to exercise our discretion to reach that error, we cannot ignore the fact that the preface correctly set out, in an orderly way, the elements that the state had to prove to establish the offense of strangulation. It follows that, even though the court's instructions incorrectly folded a material factual element into the definition of "knowingly," the preface to the instruction on strangulation provided the jury with a roadmap on how the elements of that offense fit together.[5]

A third factor supports not reaching the error. As discussed above, we cannot say that defendant invited the erroneous jury instruction. However, defense counsel had an opportunity to review the court's proposed instructions and discuss them with the court and the state off the record. We do not know what, if anything, was said during that discussion; however, it was defendant's obligation, as the appellant, to put the substance of that discussion on the record to the extent it bears on preservation. *See State v. Y. B.*, 296 Or App 781, 785, 439 P3d 1036 (2019) (explaining the appellant's burden to create a sufficient record).

It may be that the omission of one element from the list of specific elements the state had to prove was never mentioned in any off-the-record discussion. It may also be

---

[5] The state's closing argument served a similar, less official function. The prosecutor's closing argument on strangulation clearly identified the state's obligation to prove that defendant impeded her daughter's normal breathing or circulation by applying pressure to her throat. Additionally, the prosecutor's closing argument specifically identified the evidence (defendant's putting her hands around her daughter's throat) that, in his view, proved that element of strangulation. Defense counsel's closing argument did not address that issue. His argument focused more generally on whether the underlying family disputes that gave rise to the various charges against defendant should be left to therapy rather than the courts.

that defendant affirmatively agreed with the way the court structured the elements of strangulation that the jury had to find. We cannot tell on this record. At a minimum, defense counsel's statement that the defense had "[n]o objection" to the court's proposed instructions may have led the court to overlook any inadvertent omission. In that respect, defense counsel's affirmative statement cuts against exercising our discretion to reach the error.

Finally, we note that, if defendant had pointed out the omission, it could have been easily corrected. In that respect, this case is essentially no different from *Wiltse*, 373 Or at 24-25. As the court explained in *Wiltse*, if the defendant in that case had raised a timely objection, the trial court could have realized that the challenged instruction was incorrect, the state could have agreed with defendant, or the court could have corrected the omission in a different way. *See id.* In declining to exercise its discretion to reach the error in *Wiltse*, the court explained that, "[a]bsent an objection, an instructional error is unlikely to be the basis for a reversal in most cases." *Id.* at 25. This case provides no good reason to depart from that observation. We decline to exercise our discretion to reach the unpreserved instructional errors that defendant identifies on direct appeal and leave defendant to pursue any remedy that she may have in post-conviction proceedings.

That leaves defendant's final assignment of error. She argues that the trial court committed plain error when it failed to merge her conviction for fourth-degree assault into her conviction for first-degree criminal mistreatment. The state concedes that the court plainly erred. We agree. *See State v. Belcher*, 301 Or App 168, 169, 455 P3d 1043 (2019) (accepting state's concession that fourth-degree assault and first-degree criminal mistreatment merged under circumstances of that case). We accordingly reverse the judgment and remand so that the trial court can merge the two convictions.

Reversed and remanded with instructions to merge defendant's convictions for fourth-degree assault and first-degree criminal mistreatment into a single conviction for first-degree criminal mistreatment; otherwise affirmed.